**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JANICE MCCALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-cv-2000-M |
| | § | |
| SOUTHWEST AIRLINES CO. and | § | |
| SOUTHWEST AIRLINES PILOTS' ASSN., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Southwest Airlines' Motions to Dismiss under Federal

Rule of Civil Procedure 12(b)(1) and for Judgment on the Pleadings under Rule 12(c) [Docket

Entry #30].  For the reasons explained below, the Motion to Dismiss for lack of subject matter

jurisdiction is **DENIED** and the Motion for Judgment on the Pleadings is **DENIED** in part and

**GRANTED** in part.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Janice McCall is an airline pilot employed by Defendant Southwest Airlines

("Southwest") at the rank of First Officer.  McCall is a member of Defendant Southwest Airlines

Pilots' Association ("SWAPA"), a union that is the certified collective bargaining representative

for all Southwest pilots.

On December 5, 2007, McCall was paired with Captain Jim Austin to pilot Flight 3839

from Philadelphia to Nashville.  Following normal operating procedures prior to departure,

Captain Austin and First Officer McCall conducted independent exterior inspections of the

aircraft and concluded that there was no need to deice the plane prior to takeoff.[1]  Takeoff, flight and landing were uneventful, and the plane landed in Nashville as scheduled.  Upon landing, the deadheading crew informed Captain Austin of ice and snow accumulation on the wings of the plane.  McCall was not a party to this conversation.

When McCall was made aware of the incident, she filed a report under an internal safety reporting program that protects self-reporting pilots from punitive disciplinary action.[2]  The team reviewing the report unanimously determined that McCall should be returned to work with retraining, and her case was officially closed.  However, Captain Austin's report, filed just 26 minutes after McCall's, was rejected from the protective program as untimely.  Austin protested the disparity in treatment, attributing his rejection from the program to his history of hostile relations with Southwest and SWAPA.  In a move that McCall alleges was motivated by Southwest's desire to fire Austin without appearing discriminatory, McCall was retroactively expelled from the protective program.[3]  On January 21, 2008, Southwest terminated McCall, citing her failure to properly inspect Flight 3839 for ice.  Austin and McCall were the first Southwest pilots in the airline's history to be terminated for failure to deice.[4]

Over McCall's objection, SWAPA accepted a settlement with Southwest pursuant to which McCall was reinstated and her termination reduced to a 30-day suspension without pay.[5]  McCall complained of SWAPA's action in approving the settlement, but did not expressly

---

[1] Deicing is a procedure used to clear aircraft wings of accumulated snow and ice and to protect the aircraft during flight.  The deicer sprays fluid on the aircraft's wings, and this fluid keeps snow and ice from adhering to the wings during takeoff and flight.
[2] The Memorandum of Understanding of the Southwest Airlines Aviation Safety Action Partnership (ASAP) expressly protects pilots against company punitive disciplinary action arising out of a safety-related incident that the pilot self-disclosed to the program in the form of an ASAP report.  *See* McCall's Complaint at 11.
[3] *See* McCall's Complaint at 14.
[4] *See id.* at 8.
[5] *See id.* at 5.

request presentation to the Southwest Airlines Pilots' Board of Adjustment.[6]

On November 7, 2008, McCall filed suit against SWAPA and Southwest for breach of the duty of fair representation, breach of the Collective Bargaining Agreement ("CBA"), retaliatory discharge, and defamation.  On July 15, 2009, SWAPA moved to dismiss the claims against it, asserting that this Court lacks subject matter jurisdiction because McCall failed to exhaust the internal union remedies available to her, and that McCall failed to state claims upon which relief can be granted.  On October 1, 2009, the Court: (1) denied the motion to dismiss for lack of subject matter jurisdiction; (2) denied the motion to dismiss for failure to state a claim as to McCall's claim for breach of the duty of fair representation; and (3) granted the motion to dismiss for failure to state a claim as to McCall's claims for retaliatory discharge and defamation (the "SWAPA Order").[7]  The claim for breach of the collective bargaining agreement did not apply to SWAPA.

On September 10, 2009, before the SWAPA Order was issued, Defendant Southwest moved to dismiss McCall's claims on similar grounds.  The Court addresses Southwest's Motions anew, even though some of the same arguments were resolved by the Court in its SWAPA Order.

<u>ANALYSIS</u>

I.     12(b)(1) Motion to Dismiss

Southwest presents two alternative arguments as to the Court's lack of subject matter jurisdiction over McCall's hybrid claim.  First, Southwest argues that McCall failed to exhaust

---

[6] The Railway Labor Act, 45 U.S.C. § 151 *et seq.*, mandates the establishment of a board of adjustment, which functions as an arbitrator over minor disputes arising under a collective bargaining agreement that could not be successfully resolved through internal procedures.  *See* 45 U.S.C. § 184 (2006) ("It shall be the duty of every carrier and of its employees, acting through their representatives . . . to establish a board of adjustment . . . ."); *see generally Int'l Assoc. of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 685-89 (1963) (discussing history of requirement that air carriers and their employees establish boards of adjustment to resolve disputes arising out of existing contracts).

[7] *See McCall v. Southwest Airlines Co.*, 2009 U.S. Dist. LEXIS 91971 (N.D. Tex. Oct. 1, 2009) (Lynn, J.).

her internal union remedies, and has further failed to show any reasons why she should be excused from doing so.  Second, Southwest argues that McCall has failed to allege facts showing that Southwest colluded with SWAPA in the breach of SWAPA's duty of fair representation.

A.  Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim.[8]  Normally, the court determines subject matter jurisdiction from the sufficiency of the allegations in the complaint, because they are presumed to be true.[9]  But if a defendant makes a factual attack on subject matter jurisdiction by providing evidentiary materials challenging the jurisdiction of the court, as Southwest has done, the court is free to weigh evidence from both sides in resolving disputed factual issues.[10]  The plaintiff then bears the burden of proving jurisdiction by a preponderance of the evidence.[11]

B.  Discussion

1.  Failure to Exhaust Internal Union Remedies

Before an employee may bring suit against an employer for breach of a collective bargaining agreement, the employee is generally required to exhaust any grievance or arbitration remedies provided in that agreement.[12]  But when the union representing the employee vis-à-vis the employer in any grievance or arbitration procedure "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee may bring suit against both the employer and the union in federal court without having first exhausted

---

[8] *See Home Builders Ass'n, v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).
[9] *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[10] *See MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citations omitted).
[11] *See Paterson*, 644 F.2d at 523.
[12] *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983) (citations omitted).

the grievance and arbitration remedies under the collective bargaining agreement.[13]  Such a

lawsuit is called a "hybrid" action.

While the hybrid action allows an employee to bring suit without having exhausted her

remedies under the collective bargaining agreement, the employee generally has a separate

remaining duty to exhaust all internal union grievance procedures.[14]  However, courts have

discretion to decide whether to require exhaustion of such remedies before suit is brought.[15]  In

*Clayton v. International Union, UAW*,[16] the Supreme Court identified at least three factors

relevant to this determination: "first, whether union officials are so hostile to the employee that

he could not hope to obtain a fair hearing on his claim; second, whether the internal union

appeals procedures would be inadequate either to reactivate the employee's grievance or to

award him the full relief he seeks . . . and third, whether exhaustion of internal procedures would

unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his

claim."[17]  If the court finds that any of these factors exist, it may properly excuse the employee's

failure to exhaust internal union remedies.

Southwest argues that McCall has not exhausted her internal remedies, and that she has

failed to allege facts showing that she should properly be excused from exhausting those

remedies.  McCall contends that she did not need to pursue any further intra-union procedures

because those procedures were not grievance related.[18] She further argues that even if there were

appeals procedures that she could have pursued, such a pursuit would have been futile.[19]

---

[13] *See id.* at 164 (citations omitted).
[14] *See Hayes v. Bhd. of Ry. & Airline Clerks/Allied Servs. Div.*, 727 F.2d 1383, 1385-86 (5th Cir. 1984) (citation omitted).
[15] *See Clayton v. Int'l Union, UAW*, 451 U.S. 679, 689 (1981); *Hayes*, 727 F.2d 1383, 1385-87 (extending the same requirement to an action under the Railway Labor Act).
[16] 451 U.S. 679 (1981).
[17] *Id.* at 689.
[18] McCall's Response at 5.
[19] *See id.*

In *Clayton*, the defendant union required every union member "who feels aggrieved by any action, decision, or penalty imposed upon him by the union to exhaust internal union appeals procedures before seeking redress from a civil court or government agency."[20]  These procedures were established by two articles in the union's constitution and incorporated into its bylaws.[21]  Furthermore, the procedures specified the proper progression in which to seek relief if the result obtained at any stage was not satisfactory.[22]

Likewise, in *Hayes v. Brotherhood of Railway & Airline Clerks*, the defendant union set forth an internal procedure in its "Protective Laws" whereby an aggrieved union member could appeal a union officer's decision.[23]

In contrast, Article XIII of the SWAPA Constitution and Bylaws, cited by Southwest in support of its argument, does not provide specific grievance procedures for the type of complaint McCall asserts.  Section 1, entitled "Hearings," reads, in full:

A.  Any active member or group of members in good standing has the right to a hearing in person before the Board of Directors.

B.  To address the Board of Directors, an active member in good standing must notify the Secretary/Treasurer in writing at least five days prior to the next scheduled meeting.

C.  Items requiring a vote of the Board of Directors shall require a sponsor from the Board of Directors to make a formal motion.[24]

This section does not pertain to grievance procedures on its face, nor does it provide any information about what topics are appropriate for a Board hearing.  There is no direction as to what information must be contained in the requisite notice to the Secretary/Treasurer.  There is no guidance as to what items require a vote of the Board, nor information on how to obtain a

---

[20] *Clayton*, 451 U.S. at 682-83 (citing UAW Constitution Art. 33 § 12) (internal quotation marks omitted).
[21] *See id.*
[22] *See id.*
[23] *See Hayes*, 727 F.2d at 1385.
[24] *See* McCall's Complaint, Ex. 10 at 17.

sponsor from the Board if one is necessary.  As for items that do not require a vote, no notice is given as to what the available remedies might be.

Section 2, dealing with petitions through the union membership, is equally vague as to its relevance to an internal grievance process.  Subsection B(3) simply states that "[i]ssues are to be limited to those which are consistent with the objects of the Association."[25]  Although the procedures related to submitting a petition are more detailed than those for obtaining a Board hearing, it is not obvious—and the document nowhere states—that a membership petition, possibly resulting in a referendum and vote by the entire union membership, is a mechanism meant for the resolution or appeal of individual grievances.

Southwest contends that "[n]othing in SWAPA's Bylaws indicates that [McCall] could not have used these procedures to dispute SWAPA's decision to settle her grievance and seek to have SWAPA take her grievance to arbitration."[26]  However, neither does anything in the SWAPA Constitution or Bylaws affirmatively direct employees to use these procedures. Southwest does not point to any provisions in the SWAPA Constitution and Bylaws that provide a clear procedure whereby McCall's grievance concerning an alleged breach of the duty of fair representation could be heard and adequately remedied through an internal union process.  While it is difficult for a plaintiff to satisfy the burden of affirmatively showing that such a provision does *not* exist, the preponderance of the evidence shows that there are no further internal union remedies to exhaust.[27]  The Court therefore does not reach the question of whether McCall had any proper excuses for failure to exhaust.

---

[25] *Id.* at 18.
[26] Southwest's Motion at 6-7.
[27] *See Hammons v. Adams*, 783 F.2d 597, 602 (5th Cir. 1986) ("If, however, the union's constitution does not provide a procedure whereby [the employee's] grievance concerning breach of a local union's duty of fair representation may be heard and adequately remedied, there is nothing to exhaust."); *see also Guidry v. Int'l Union of Operating Eng'rs, Local 406*, 882 F.2d 929, 941 (5th Cir. 1989) ("The Union Constitution and bylaws . . . provide simply that the local union's determination of any grievance shall be final and binding.  Neither provides specific

2.   Failure to Allege Facts Supporting Collusion

In the alternative, Southwest argues that the Court lacks jurisdiction over McCall's hybrid claim because McCall must first allege that the employer colluded with the union in breaching the union's duty of fair representation.

Under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, which Congress has extended to the airline industry,[28] air carriers are required to maintain a Board of Adjustment to resolve disputes between the carrier and its employees.[29] The Board has exclusive jurisdiction over all "minor disputes," which are defined as "those involving the interpretation or application of existing contracts,"[30] and therefore has been held to include claims of wrongful discharge.[31]

Hybrid claims are an exception to the Board's exclusive jurisdiction.[32]  A district court has jurisdiction over a plaintiff's hybrid claim against both his union for breaching its duty of fair representation and his employer for breaching its duties under the collective bargaining agreement.[33]

Southwest contends that McCall has an additional burden to plead facts supporting collusion between Southwest and SWAPA in SWAPA's breach of its duty before bringing her hybrid claim.  The Fifth Circuit has not ruled on this issue, only noting in dicta that "[o]ne circuit has found that a federal court has jurisdiction over a hybrid action under the [Railway Labor Act] only if both the railroad and the union are parties and if the employee alleges collusion between

---

grievance procedures for the type of complaint [the employee] asserts.  In such absence of procedural requirements, an employee may proceed to file suit after pursuing his contractual remedies.").

[28] *See* 45 U.S.C. § 181; *Int'l Assoc. of Machinists & Aerospace Workers, Airline District 146 v. Frontier Airlines, Inc.*, 664 F.2d 538, 540 (5th Cir. 1981).

[29] *See* 45 U.S.C. § 184; *Thomas v. Illinois C. R.R. Co.*, 521 F.2d 208, 209 n.1 (5th Cir. 1975).

[30] *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 496 n.4 (1989).

[31] *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323 (1972); *Thomas*, 521 F.2d at 209 n.1 (citing *Andrews*, 406 U.S.).

[32] *See Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 123 (5th Cir. 1990) (citations omitted).

[33] *See Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 328-29 (1969).

the railroad and the union."[34]  One other Circuit has since noted that alleging such collusion is

necessary to establishing jurisdiction.[35]

In *Turpen v. Missouri-Kansas-Texas R.R. Co.*,[36] District Judge Mahon concluded that the

court did not have jurisdiction over a hybrid claim under the Railway Labor Act where no pattern

of collusion between the union and the employer was alleged or suggested by the facts.[37]

Although *Czosek v. O'Mara*,[38] cited in *Turpen*, does not address the question,[39] this Court agrees

with the holding in *Turpen* and concludes that McCall must allege collusion between Southwest

and SWAPA in order to establish jurisdiction in this Court over her hybrid claim.

Applying this conclusion to McCall's Complaint, there are sufficient allegations of

collusion to support jurisdiction over McCall's hybrid claim.  McCall alleges that SWAPA

cooperated with Southwest, at Southwest's request, to have McCall retroactively removed from

the protective reporting program so that it could terminate Captain Austin, and that such

collusion failed to protect McCall's rights as a union member and resulted in treatment that was

markedly different from the way in which other union members had been treated, exemplified by

McCall's acceptance and then rejection from the protective reporting program.[40]  While this

alleged fact cannot form the basis of a claim for breach of the duty of fair representation, having

---

[34] *See Trial*, 896 F.2d at 123 n.1 (citing *Hodges v. Atchison, Topeka & Santa Fe Ry. Co.*, 728 F.2d 414 (10th Cir. 1984), *cert. denied*, 469 U.S. 822 (1984).

[35] *See, e.g., Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004) ("The hybrid exception applies where there are good faith allegations and facts supporting those allegations indicating collusion or otherwise tying the [employer] and the union together in allegedly arbitrary, discriminatory or bad faith conduct amounting to a breach of the duty of fair representation." (quoting *Raus v. Bhd. Ry. Carmen*, 663 F.2d 791, 797-98 (8th Cir. 1981) (internal quotation marks omitted)).

[36] 573 F. Supp. 820 (N.D. Tex. 1983) (Mahon, J.).

[37] *Id.* at 821-22.

[38] 397 U.S. 25 (1970).

[39] The Supreme Court stated: "[W]e have no occasion to consider whether under federal law, which governs in cases like these, the employer may always be sued with the union when a single series of events gives rise to claims against the employer for breach of contract and against the union for breach of the duty of fair representation or whether, as the [Second Circuit] held, when there are no allegations tying union and employer together, the union is suable in the District Court for breach of duty but resort must be had to the Adjustment Board for a remedy against the employer."  *Id.* at 29-30.  *See also Raus*, 663 F.2d at 796.

[40] *See* McCall's Complaint at 14, 17.

occurred before the termination grievance, it supports McCall's contention of "an ongoing pattern of collusion between Southwest and SWAPA that has denied Southwest pilots fair and equal representation . . . ."[41]

Furthermore, McCall presents facts sufficient to support inferences of post-termination collusion.  She alleges that Southwest and SWAPA conspired to pressure McCall into giving false testimony and altering her previous truthful testimony in connection with pending FAA and Department of Labor investigations, as described in her account of post-termination telephone conversations with SWAPA Jumpseat Chairman John Boobas.[42]  McCall alleges that Boobas pressured McCall to "go directly to Southwest management and 'just talk to them,' and 'apologize directly,'"[43] and that Boobas was very clear that Southwest was offering McCall reinstatement after her termination as consideration for false testimony relating to Captain Austin.[44]

McCall alleges sufficient facts to support collusion between Southwest and SWAPA. She has also exhausted her internal union remedies before bringing suit.  Therefore, Southwest's jurisdictional challenges to McCall's hybrid claim fails.

II.      12(c) Motion for Judgment on the Pleadings

Southwest moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(c), which provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  In analyzing a motion for judgment on the pleadings under Rule 12(c), a court uses the same standard as a motion to dismiss for failure

---

[41] *Id.* at 1.
[42] *See id.* at 1, 32-34.
[43] *Id.* at 32.
[44] *See id.* at 34.

to state a claim upon which relief may be granted under Rule 12(b)(6).[45]

### A.  Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*[46] and reaffirmed in *Ashcroft v. Iqbal*,[47] the pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[48]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[49]  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do.[50]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[51]  A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged.[52]  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[53]

### B.  The Hybrid Claim

In a hybrid claim, the breach of the duty of fair representation and the breach of the

---

[45] *See Giardina v. Lawrence*, 2009 U.S. App. LEXIS 26649, at *3 (Dec. 7, 2009) (applying the *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), standard to a Rule 12(c) motion for judgment on the pleadings); *Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).
[46] 550 U.S. 544 (2007).
[47] 129 S. Ct. 1937 (2009).
[48] *Id.* at 1949 (citations omitted).
[49] *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555).
[50] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[51] *Id.* at 570.
[52] *See Twombly*, 550 U.S. at 556.
[53] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.

collective bargaining agreement are "inextricably interdependent."[54]  The employee must therefore show both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement.[55]

        1.   SWAPA's Breach of the Duty of Fair Representation

The Supreme Court has found a statutory duty of fair representation in the Railway Labor Act.[56]  This duty arises out of the relationship between a union and members of a collective bargaining unit, and requires SWAPA, as the exclusive bargaining agent for all Southwest pilots, to represent fairly all of those employees subject to a collective bargaining agreement with Southwest.[57]  A union violates its duty of fair representation only if its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.[58]  Each of these standards represents a distinct and separate inquiry.[59]

Under the "arbitrary" prong, a union's actions breach the duty of fair representation "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."[60]  The Fifth Circuit has conceded that the arbitrariness standard is difficult to define, but stated that, to be non-arbitrary, a decision must be: "(1) based upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political

---

[54] *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983); *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 850 (5th Cir. 1989) (quoting *DelCostello*, 462 U.S. at 164-65).

[55] *See DelCostello*, 462 U.S. at 165 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981) (Stewart, J., concurring)).

[56] *See Vaca v. Sipes*, 386 U.S. 171, 177 (citing *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944); *Tunstall v. B'hd of Locomotive Firemen*, 323 U.S. 210 (1994)).

[57] *Id.* (citing *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)); *Richardson v. United Steel Workers of Am.*, 864 F.2d 1162, 1166 (5th Cir. 1989).

[58] *Vaca*, 386 U.S. at 190 (citations omitted); *see Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991).

[59] *See Griffin v. Int'l Union, United Automobile A & AIW*, 469 F.2d 181, 183 (4th Cir. 1972) ("A union must conform its behavior to each of these three separate standards. . . .  Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.").

[60] *O'Neill*, 499 U.S. at 67 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)) (internal quotation marks omitted); *see Marquez v. Screen Actors Guild*, 525 U.S. 33, 46 (1998) ("A union's conduct can be classified as arbitrary only when it is irrational . . . without a rational basis or explanation.").

favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees."[61]

A union must also treat its members similarly.[62]  The kind of discriminatory action proscribed by the second prong of the tripartite test is discriminatory action that is "invidious."[63] As to the third prong, the Fifth Circuit has described the "demanding standard" of demonstrating bad faith as conduct that is "sufficiently egregious" or so "intentionally misleading" as to be "invidious," or as to evince a purpose to intentionally harm the membership.[64]  Bad faith conduct has also been described by the Fifth Circuit as "the absence of honest purpose and judgment or the presence of hostility or discrimination" by the union.[65]

A union does not breach the duty of fair representation through simple negligence or a mistake in judgment; the critical question is whether a union's conduct was arbitrary, discriminatory, or in bad faith, such that it undermined the fairness or integrity of the grievance process.[66]  In the interest of effectively administering the machinery of grievance arbitration, a union is allowed a wide range of discretion in screening out, settling, or abandoning grievances before arbitration if it believes in good faith that the particular grievance does not justify proceeding through the "costly and time-consuming final step" of arbitration.[67]  An employee "has no absolute right to have his grievance taken to arbitration, or to any other level of the

---

[61] *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976).
[62] *See Vaca*, 386 U.S. at 191 (labor laws are designed to ensure that "similar complaints will be treated consistently").
[63] *See O'Neill*, 499 U.S. at 81.
[64] *See O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203, 1204 (5th Cir. 1991).
[65] *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1128 n.9 (5th Cir. 1980).
[66] *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989) (internal citations and quotation marks omitted).
[67] *Local 575, Packinghouse Division, Amalgamated Meat Cutters and Butcher Workmen (UPWA), AFL-CIO (Omaha Packing Company)*, 206 N.L.R.B. 576, 579 (1973) (citing *Vaca*, 386 U.S. at 190-91); *see Vaca*, 386 U.S. at 192 (concluding that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration").

grievance process."[68]

SWAPA's duty of fair representation is associated with the grievance process that began after McCall was terminated by Southwest.  McCall makes several allegations regarding arbitrary, discriminatory, or bad faith actions taken by SWAPA in the investigatory period preceding her termination, but these alleged acts cannot form the basis for her claim for a breach of the duty of fair representation.  Nor, as explained in the SWAPA Order, do claims for retaliatory termination and defamation lie where SWAPA is neither McCall's employer nor the employer of the individuals who allegedly made the defamatory statements.

The remaining relevant allegations for consideration are that SWAPA: (1) attempted to coerce McCall into materially altering her account of the Flight 3839 deicing incident by brokering back-door deals after her termination; (2) refused to give McCall information relevant to her defense, and to which she had a right to access, after she had requested this information in good faith; (3) denied McCall "meaningful grievance process participation at every turn" in connection with her formal dispute with Southwest; (4) appointed an ethically conflicted lawyer to represent her before the FAA and then summarily denied her repeated objections and requests for fair representation; (5) refused to submit her grievance to the Southwest Pilots' Systems Board of Adjustment; and (6) accepted a grievance settlement offer on her behalf "despite her vehement protests." [69]

McCall has sufficiently stated a claim for breach of the duty of fair representation.  McCall advances only the theories of arbitrary and discriminatory conduct in her Complaint, so the Court only considers those two tests.

The crux of McCall's claim is that SWAPA refused to take her grievance before the

---

[68] *Landry*, 880 F.2d at 852 (citing *Turner v. Air Transport Dispatchers Assoc.*, 468 F.2d 297, 299 (5th Cir. 1972)).
[69] *See* McCall's Complaint at 24-25, 43-45.

Systems Board of Adjustment, instead unilaterally accepting a grievance settlement on her behalf "despite her vehement protests."[70]  McCall further alleges that SWAPA accepted the settlement without discussing the terms and conditions of the settlement with her, and without providing her with access to counsel.[71]

While the refusal to press a grievance case to this stage may not, in and of itself, precipitate a claim for a breach of the duty of fair representation, the factual landscape described in McCall's Complaint raises a plausible inference that this particular action was arbitrary or irrational.  McCall alleges that SWAPA engaged in the following actions: expelling McCall from the protective program after her initial acceptance, conducting what McCall alleges was a "farce" of an investigation with the sole goal of setting forth justifiable grounds for her expulsion;[72] leaking federally protected narratives provided by McCall and others onto the company webpage;[73] repeatedly refusing her multiple requests for data to help identify other instances in which pilots were rejected or expelled from the protective program;[74] classifying the deicing incident as an "administrative" rather than a "safety" issue to deny McCall her right of access to a mediated debrief program;[75] convincing McCall to write, and assisting her in writing, a formal apology and admission of guilt to Southwest despite McCall's insistence upon her innocence, which letter was promptly cited by Southwest in support of her termination;[76] attempting to coerce McCall into materially altering her account of the Flight 3839 deicing incident because of a pending U.S. Department of Labor whistleblower complaint filed by Captain Austin;[77]  failing

---

[70] *Id*. at 44.
[71] *See id.* at 39.
[72] *See id.* at 19.
[73] *See id.* at 22.
[74] *See id.* at 24-25.
[75] *See id.* at 26-27.
[76] *See id.* at 29-31.
[77] *See id.* at 31-34.

to adequately investigate her grievance;[78] and appointing an ethically conflicted lawyer to represent her before the FAA and then summarily denying her repeated objections and requests for fair representation.[79]  Such facts, considered together and taken as true, create a plausible inference that either or both SWAPA's refusal to present McCall's case to the Board and its acceptance of the settlement agreement was arbitrary or irrational.

Southwest also argues that McCall "tacitly consented" to the settlement agreement by returning to work and receiving all the benefits negotiated by SWAPA in the agreement.[80]  But in considering a Rule 12(c) motion for judgment on the pleadings, the Court must accept as true the facts pled in McCall's Complaint.  McCall asserts several times in her Complaint that she was strongly opposed to the settlement agreement.  Even if McCall never offered to give up the benefits of her settlement, that fact would not establish conclusively that she was not opposed to the settlement agreement.

In addition to the history recited above, McCall alleges the following additional facts to support a claim that SWAPA's behavior was discriminatory: (1) that Captain Austin was unpopular among SWAPA officials because, among other things, he publicly participated in a previous financial audit of SWAPA resulting in the removal of senior SWAPA officials;[81] (2) that SWAPA collaborated with Southwest to have McCall retroactively removed from the protective reporting program so that it could terminate Austin;[82] and (3) that such cooperation failed to protect McCall's rights as a union member and resulted in discriminatory treatment.[83]  While these facts cannot form the basis of a claim for breach of the duty of fair representation,

---

[78] *See id.* at 40-42.
[79] *See id.* at 44.
[80] *See* Southwest's Motion at 18.
[81] *See* McCall's Complaint at 8.
[82] *See id.* at 14.
[83] *See id.* at 14, 17.

having occurred before the termination grievance, they can be considered to raise a plausible

inference that SWAPA's actions during the grievance process were discriminatory.

The facts pled by McCall, taken as true, cumulatively create a plausible inference that

SWAPA breached its duty of fair representation by acting in both an arbitrary and a

discriminatory manner.

2.   Southwest's Breach of the CBA

Southwest correctly notes that McCall fails to identify any specific provisions of the

CBA that Southwest allegedly breached.  Although the CBA does not set forth specific criteria to

determine when Southwest can terminate a pilot, the fact that the CBA allows arbitration of

employee terminations implies a requirement that discharges be only for "just cause."[84]

McCall's allegations of her wrongful termination and of Southwest's collusion in SWAPA' s

breach of its duty of fair representation, both discussed in detail above, are sufficient to raise a

plausible inference that Southwest breached the CBA.

Southwest's motion for judgment on the pleadings as to McCall's hybrid claim is

therefore DENIED.

C.   Retaliatory Discharge

As a federal court sitting in diversity, this Court applies the choice of law rules of the

forum state.[85]   Texas follows the "most significant relationship" approach in choice of law

analyses.[86]   Applying this approach, McCall urges that Illinois law governs the present action,

---

[84] *See Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917 (5th Cir. 1983) ("In instances where the language of a collective contract does not explicitly prohibit dismissal except for just cause, arbitrators typically infer such prohibitions from seniority clauses or grievance and arbitration procedures." (citations omitted)); *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769, 771 n.3 (5th Cir. 1977) (finding that a "just cause" limitation upon the employer's right to discharge its employees "should be inferred as a part of the basic fabric of the collective bargaining agreement.").

[85] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cantu v. Jackson Nat'l Life Ins. Co.*, 2009 U.S. App. LEXIS 18049, at *5 (5th Cir. Aug. 12, 1998) (citing *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990)).

[86] *See Hughes Woods Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing *Gutierrez v. Collins*, 583

while Southwest argues that Texas law should apply.

The proper choice of law analysis is conducted under the principles and factors set out in the Restatement (Second) of Conflict of Laws §§ 6 and 145.  The principles stated in § 6 apply to all choice of law rules, while § 145 specifically governs cases sounding in tort.[87]  Under § 6, the court must evaluate such factors as the relative interests of the states involved in the determination of the particular issue, the relevant policies of the forum and other interested states, the protection of justified expectations, and the certainty, predictability and uniformity of results.  Under § 145, contacts to be taken into account in applying these principles include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered.  These contacts are to be evaluated according to their relative importance with respect to the particular issue.[88]

The Court finds that Texas is the state with the most significant relationships in this case. McCall's various in-person and telephone interviews in Chicago, Illinois do not compel a different conclusion.  Indeed, in arguing that venue is proper in this district, McCall stated in her Complaint that "a substantial part of the acts giving rise to this action took place in Dallas."[89] Illinois has no substantial interest in having its law apply, because no interests of Illinois residents or businesses are involved.  Texas, on the other hand, has a strong interest in having its employment laws apply to Texas corporations.  Southwest is a Texas corporation.  SWAPA is headquartered in Dallas, Texas, where it conducts extensive operations.  McCall is neither a resident of Texas nor Illinois.

---

S.W.2d 312, 318 (Tex. 1979)).
[87] *See id.*
[88] Restatement (Second) of Conflicts § 145.
[89] *See* McCall's Complaint at 3.

Applying the principles and factors set out in the Restatement (Second) of Conflict of Laws §§ 6 and 145, the Court finds that Texas law governs the present action.

McCall raises a claim for retaliatory discharge in Count III of her Complaint.  While McCall's claim is based on Illinois law, the Court examines her factual pleadings to ascertain whether she presents a cognizable claim under Texas law.  The Texas Supreme Court has held that "public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment-at-will doctrine."[90]  That narrow exception "covers only the discharge of an employee for the *sole* reason that the employee refused to perform an illegal act."[91] The word "sole" is emphasized here because the court further held that the plaintiff bears the burden of proving, by a preponderance of the evidence, that her discharge was "for no reason other than her refusal to perform an illegal act."[92]

McCall alleges in her Complaint that: (1) she was pressured by Southwest to materially alter her account and/or testimony in a Department of Labor investigation into a whistleblower complaint filed by Captain Austin;[93] (2) that doing so would have subjected her to criminal liability under 18 U.S.C. § 1001, which makes it a crime for anyone to knowingly and willfully make any false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of any department or agency of the United States;[94] and that (3) she was discharged for her refusal to alter her account of the Flight 3939 deicing incident.  Taken together, these allegations state a claim that McCall was discharged because of her refusal to perform an illegal act.

However, McCall also alleges in her Complaint that "Southwest, with SWAPA's

---

[90] *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).
[91] *Id.* (emphasis added).
[92] *Id.*
[93] *See* McCall's Complaint at 49.
[94] *See id.* at 48-50.

cooperation, terminated McCall as part of its effort to get rid of Captain Jim Austin."[95] Therefore, McCall fails to show—in fact, she does not even allege—that she was discharged for the *sole* reason that she refused to perform an illegal act.  McCall's claim thus does not fall within the narrow exception of retaliatory termination claims recognized by Texas law.

Furthermore, McCall does not refute Southwest's observation that Southwest terminated McCall one month *before* Austin filed his whistleblower complaint, a fact that makes it difficult to contend that Austin's complaint was the basis for her termination.  In fact, McCall's Complaint alleges that Southwest and SWAPA put pressure on her to materially alter her account *after* she was terminated by Southwest.[96]

McCall's complaint against Southwest for retaliatory discharge fails to state a claim under Texas law, and is therefore dismissed.

D.      Defamation

Finally, McCall alleges that Southwest is vicariously liable for defamation based on the publishing of various statements regarding McCall's case via email, speech, and print to third parties.[97]  For the same reasons as discussed above, Texas law governs this defamation claim.

Under Texas law, an employer may be held vicariously liable for defamatory comments made by an employee in the scope of his or her employment.[98]  An action for vicarious liability lies where the defamation "is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty."[99]

---

[95] *See id.* at 5.

[96] *See id.* at 31-35.

[97] *See* McCall's Complaint at 53 (arguing that the statements made by two individuals "are imputed to . . . Southwest").

[98] *See Carlton v. Steele*, 278 F. App'x 352, 353 (5th Cir. 2008) (citation omitted); *Grogan v. Savings of Am., Inc.*, 118 F. Supp. 2d 741, 750 (S.D. Tex.  1999) (citation omitted); *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).

[99] *Minyard*, 80 S.W.3d at 577 (discussing the Texas Supreme Court's adoption of this rule in 1968) (citations omitted).  *See Anderson v. City of Dallas*, 2005 Tex. App. LEXIS 5115, at *17 (Tex. App.—Dallas, July 1, 2005,

McCall's defamation claim is based on the allegedly defamatory statements of two individuals, Tom Dean and Steve Swauger. McCall refers to Swauger as a "Southwest Captain" in her Complaint.[100] Southwest does not dispute that Swauger is a Southwest pilot.[101]

McCall claims that Swauger posted a defamatory comment about her on an internet forum known as the Professional Pilots Rumour Network ("PPruNe").[102] While McCall originally alleged in her Complaint that PPruNe is a SWAPA public forum, she does not refute Southwest's argument that Southwest neither owns, controls, nor endorses PPruNe or the statements within it.[103] McCall baldly asserts, without explanation, that Swauger's post was made within the scope of his employment.[104] She also fails to explain how the post was made in furtherance of his duties as a Southwest pilot. McCall therefore fails to state a claim that Southwest is vicariously liable for defamation based on Swauger's posting. Because the Court finds that Southwest cannot be held vicariously liable for Swauger's statements as pleaded, it does not reach Southwest's alternative argument that the alleged statement was not defamatory.

As for Tom Dean, McCall's Complaint alleges that he is "the LAS SWAPA Domicile Representative." [105] According to the SWAPA Constitution, domicile representatives are active SWAPA members in good standing.[106] Although McCall never explicitly alleges that Dean is a Southwest employee, the Court may draw the inference that Dean, as a member of a union of

---

n.w.h.) ("An employer may also be liable for defamatory comments made by an employee in the scope of his or her employment.") (citing *Minyard*, 80 S.W.3d at 577 (Tex. 2002)); *Cotton Belt R.R. v. Hendricks*, 768 S.W.2d 865, 870) (Tex. App.—Texarkana 1989, no writ) (to prevail on a defamation claim against a corporate employer, the plaintiff must show that the defamatory publication was made by an employee in the course and scope of the declarant's employment).

[100] *See id.* at 52.

[101] *See* Southwest's Motion at 22.

[102] *See* McCall's Complaint at 52-53. While McCall does not explicitly state that Swauger's comment was posted on PPruNe, this is the most reasonable conclusion given the context of the quotation.

[103] *See* Southwest's Motion at 23.

[104] *See* McCall's Complaint at 53.

[105] *See id.* The Complaint never makes clear what the acronym "LAS" stands for, nor is this explained in any subsequent briefing.

[106] *See* McCall's Complaint, Ex. 10 at 8.

Southwest pilots, is himself a Southwest pilot and is employed by Southwest.

However, the allegations regarding Dean fail to state a claim against Southwest for the same reasons that the allegations involving Swauger fail to state a claim.  McCall claims that Dean posted defamatory comments about her on PPruNe.[107]  McCall does not refute Southwest's argument that Southwest neither owns, controls, nor endorses PPruNe or the statements within it.[108]  McCall baldly asserts, without explanation, that Dean's post was made within the scope of his employment.[109]  She also fails to explain how the post was made in furtherance of his employment duties.  McCall therefore fails to state a claim that Southwest is vicariously liable for defamation based on Dean's posting.  Because the Court finds that Southwest cannot be held vicariously liable for Dean's statements, it does not reach Southwest's alternative argument that the alleged statements were not defamatory.

McCall's claims for defamation against Southwest are therefore dismissed, without prejudice to repleading.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss under Rule 12(b)(1) is **DENIED**.  The Motion for Judgment on the Pleadings under Rule 12(c) is **DENIED** as to McCall's hybrid claim and **GRANTED** as to McCall's claims for retaliatory discharge and defamation.


**SO ORDERED.**

January 12, 2010.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[107] *See* McCall's Complaint at 51-52.
[108] *See* Southwest's Motion at 23.
[109] *See* McCall's Complaint at 53.