

SOUTHWEST AIRLINES CO.
Denny Keller
Senior Chief Pilot
Flight Operations
P. O. Box 36611
2702 Love Field Dr.
HDQ 8FO
Dallas, Texas 75235-1611
214-792-3948

January 21, 2008

Via Hand Delivery

Janice McCall
4168 Hartford Street
St. Louis, MO, 63116

Dear Janice,

On December 5, 2007, you were the First Officer of SWA Flight #3839 operating from PHL to BNA. As you know, it was reported by deadheading pilots and your Inflight Crew that, when Flight #3839 departed Philadelphia, the aircraft surface was neither clean nor free of contamination. Upon learning this information, Flight Operations conducted a full investigation of this incident. As a part of this investigation, your Leaders spoke to you on two separate occasions last month. On both occasions, you were represented by the Union.

Based upon the investigation, Southwest has determined that Flight #3839 was not a clean aircraft when it departed. The investigation further indicated that not only did this aircraft depart without being deiced, but by your own admission, you failed to complete the proper inspection procedures specified in the Flight Operations Manual to determine if deicing was necessary. As specified in the Flight Operations Manual and during Flight Operations training courses, the clean aircraft concept is essential for safe flight. Federal Aviation Regulations prohibit takeoff when snow, ice, or frost is adhering to wings, control surfaces, and other critical surfaces on the aircraft. To make such a determination, among other things, an inspection of the upper wing surface is required and the best vantage point for upper wing surface inspection is from the passenger cabin. By your own admission, you failed to conduct such an inspection. These are procedures of which you should be familiar. As recent as December 4, 2007, a Read Before Fly was issued reminding all pilots that, with the winter months approaching, pilots should review the proper Flight Operations Manual procedures regarding deicing and inclement weather.

Your failure to adhere to the provisions of the Flight Operations Manual and your disregard of Southwest procedures of which you have been trained was unsafe and, at the least, amounted to careless and reckless endangerment which could have endangered the lives of all individuals onboard of the aircraft. Such neglect of your duties and responsibilities are unacceptable for a Southwest Pilot and has resulted in a lack of trust and confidence in your abilities to properly perform your duties. For these reasons, your employment with Southwest Airlines is terminated effective immediately.

Sincerely,

Denny Keller
Senior Chief Pilot Flight Operations
Southwest Airlines Company

CC:   Mike Van De Ven, Executive Vice President & COO SWA
       Chuck Magill, Vice President Flight Operations

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

JANICE MCCALL,
*Plaintiff,*

v.

SOUTHWEST AIRLINES CO., and
SOUTHWEST AIRLINES
PILOTS' ASSOCIATION,
*Defendants.*

Case No. 3:08-cv-02000-M
Jury Demanded

## PLAINTIFF JANICE MCCALL'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SOUTHWEST AIRLINES CO.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Janice McCall requests that defendant Southwest Airlines Co., respond to these requests for production within 30 days from the service hereof. Unless otherwise agreed between the parties, the documents shall be produced to Camara & Sibley LLP, 2339 University Boulevard, Houston, Texas 77005.

# 1   Definitions

- "YOU" and "YOUR" mean Southwest Airlines Co., and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

- "SWAPA" means defendant Southwest Airlines Pilots Association and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, and attorneys.

- "COLLECTIVE BARGAINING AGREEMENT" means the agreement between you and SWAPA recognizing SWAPA as the sole collective bargaining representative of the Airline Pilots and Flight Engineers of Southwest Airlines Co.

- "PERSON" is defined as any natural person or any business, legal or governmental entity, or association.

- "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

- "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

- "IDENTIFY" (with respect to persons). When referring to a person, to IDENTIFY means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

- "IDENTIFY" (with respect to documents).  When referring to documents, to IDENTIFY means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

2

- "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

- "FLIGHT IN QUESTION" means Southwest Airlines Flight 3839 departing Philadelphia International Airport ("PHL") on December 5, 2007.

- "ASAP" means the Southwest Airlines Aviation Safety Action Partnership which began on or about July 27, 2000, when the first ASAP Memorandum of Understanding was signed by officials from Southwest Airlines, the Southwest Airlines Pilots Association, and the Federal Aviation Administration.

- "MEDIATED DEBRIEF PROGRAM" means the program referred to in the Temporary Substitute Agreement, executed between YOU and Southwest Airlines Pilots' Association on or about November 15, 2002, designed for the purpose of enhancing safety by helping develop a more complete picture of the events and actions surrounding incidents.

- "EMPLOYMENT FILE" shall mean any physical or electronic file, folder, container, area, or space of any kind, including multiple locations if they exist, used or designated by YOU for the purpose of keeping, storing, archiving, or referencing information CONCERNING YOUR employment of Janice McCall. To be clear, personnel files, human resource files, and employment history files are each non-exclusively within the scope of this definition.

- "THE LETTER" means the letter terminating YOUR employment of Janice McCall dated January 21, 2008.

- The following rules of construction apply to all discovery requests:

  - All/Each. The terms "all" and "each" shall be construed as all and each.

  - And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

  - Number. The use of the singular form of any word includes the plural and vice versa.

3

# 2   Instructions

- In responding to these requests, please produce all DOCUMENTS known or available to YOU, including all non-privileged information and COMMUNICATIONS in the possession of YOUR attorneys and, where applicable, YOUR officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

- To the extent that YOU withhold any DOCUMENTS because of a claim of privilege or immunity, please provide a privilege log setting forth the (i) general nature of the DOCUMENTS withheld; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s), and any other information necessary to explain YOUR claim of privilege or immunity and to allow a court to adjudicate the propriety of such claim.

- If DOCUMENTS that fall within the scope of a document request were lost or destroyed, please state so, explain all circumstances CONCERN-ING the loss or destruction of the DOCUMENTS, and please describe the (i) general nature; (ii) general subject matter; (iii) date; and (iv) author(s), addressee(s) and recipient(s), of those DOCUMENTS.

- If no DOCUMENTS fall within the scope of a document request, please state so.

- If YOU object to any portion of a request, please produce all DOCU-MENTS within the scope of the document request to which YOU do not object.

- These requests are to be regarded as continuing and YOU are requested to provide promptly, by way of supplementary production of documents, such additional DOCUMENTS as may hereafter be obtained by YOU or any PERSON acting on YOUR behalf which fall within the scope of these document requests.

4

**Request No. 1:**

Produce Janice McCalls EMPLOYMENT FILE and all DOCUMENTS CONCERNING her EMPLOYMENT FILE.

Response:

**Request No. 2:**

Produce all DOCUMENTS dated between March 1, 2004, and August 14, 2009, CONCERNING YOUR decision to terminate Janice McCalls employment.

Response:

**Request No. 3:**

Produce all DOCUMENTS dated between March 1, 2004, and August 14, 2009, CONCERNING YOUR decision to reinstate Janice-McCalls employment.

Response:

**Request No. 4:**

Produce the collective bargaining agreement in force during the FLIGHT IN QUESTION, by and between YOU and SWAPA, pursuant to which YOU recognized SWAPA as the sole bargaining representative of the airline pilots and flight engineers of Southwest Airlines Co.

Response:

5

**Request No. 5:**

    Produce the collective bargaining agreement presently in force, by and between YOU and SWAPA, pursuant to which YOU recognize SWAPA as the sole bargaining representative of the airline pilots and flight engineers of Southwest Airlines Co.

    Response:


**Request No. 6:**

    Produce the employee handbook applicable to YOUR airline pilots which was in force during the FLIGHT IN QUESTION.

    Response:


**Request No. 7:**

    Produce the employee handbook applicable to YOUR airline pilots which is presently in force.

    Response:


**Request No. 8:**

    Produce the employee handbook applicable to flight attendants which was in force during the FLIGHT IN QUESTION.

    Response:

SWA App. 7

**Request No. 9:**

Produce the employee handbook applicable to flight attendants which is presently in force.

Response:

**Request No. 10:**

Produce all DOCUMENTS CONCERNING the ASAP eligibility requirements applicable to YOUR airline pilots during the FLIGHT IN QUESTION.

Response:

**Request No. 11:**

Produce all DOCUMENTS CONCERNING the ASAP eligibillity requirements presently applicable to YOUR airline pilots.

Response:

**Request No. 12:**

Produce all DOCUMENTS CONCERNING the MEDIATED DEBRIEF PROGRAM.

Response:

**Request No. 13:**

Produce all DOCUMENTS CONCERNING the number of incidents examined pursuant to the MEDIATED DEBRIEF PROGRAM during

7

the period beginning on March 24, 2004, and ending on August 14, 2009.

Response:

**Request No. 14:**

Produce all DOCUMENTS CONCERNING the "full investigation" identified by THE LETTER'S statement that "Flight Operations conducted a full investigation of this incident."

Response:

**Request No. 15:**

Produce all DOCUMENTS CONCERNING the determination which is cited in THE LETTER's statement that: "Based upon the investigation, Southwest has determined that Flight #3839 was not a clean aircraft when it departed."

Response:

**Request No. 16:**

Produce all DOCUMENTS CONCERNING standard operating procedures, protocols, and guidelines which apply to "full investigation[s]" of the same or similar type as the "full investigation" identified by THE LETTER.

Response:

8

**Request No. 17:**

Produce all DOCUMENTS CONCERNING your belief that the particular "Southwest procedures" identified by THE LETTER are safe.

Response:


**Request No. 18:**

Produce the "Southwest procedures" which THE LETTER identifies as the "Southwest procedures of which you have been trained . . . "

Response:


**Request No. 19:**

Produce all DOCUMENTS CONCERNING THE LETTER'S statement that Janice McCall's alleged "failure to adhere to the provisions of the Flight Operations Manual and disregard of Southwest procedures of which [she had] been trained was unsafe and, at the least, amounted to careless and reckless endangerment which could have endangered the lives of all individuals on board the aircraft."

Response:


**Request No. 20:**

Produce all DOCUMENTS CONCERNING the possibility that the "disregard of Southwest procedures" identified in THE LETTER may not have endangered the lives of YOUR passengers and crew.

Response:

9

**Request No. 21:**

Produce all DOCUMENTS CONCERNING "incidents" occurring between the dates of March 6, 2000, and August 14, 2009, which resulted in a lack of trust that you regard as similar in degree to the lack of trust that THE LETTER identifies as: "Such neglect of your duties and responsibilities are unacceptable for a Southwest Pilot and has resulted in a lack of trust and confidence in your abilities to properly perform your duties."

Response:

**Request No. 22:**

Produce one DOCUMENT, or if more are necessary to comply then only as many as are necessary, identifying the total number of pilots terminated by YOU in connection with deicing incidents from the period beginning June 18, 1971, and ending August 14, 2009.

Response:

10

**Request No. 23:**

Produce one DOCUMENT, or if more are necessary to comply then only as many as are necessary, identifying the total number of deicing related sole-source ASAP reports made by YOUR pilots during the period beginning on December 5, 2006, and ending on December 4, 2007.

Response:

**Request No. 24:**

Produce one DOCUMENT, or if more are necessary to comply then only as many as are necessary, identifying the total number of deicing related sole-source ASAP reports made by YOUR pilots during the period beginning on December 5, 2007, and ending on December 4, 2008.

Response:

**Request No. 25:**

Produce one DOCUMENT, or if more are necessary to comply then only as many as are necessary, identifying each winter flight statistic recorded and maintained by YOU pursuant to YOUR internal policy since December 5, 2005.

Response:

11

**Request No. 26:**

Produce all COMMUNICATIONS during the period beginning on December 4, 2007, and ending on December 14, 2007, between YOU and the deadheading pilots whom THE LETTER identifies as having reported that when the FLIGHT IN QUESTION departed, the aircraft surface was neither clean nor free of contamination.

Response:

**Request No. 27:**

Produce the original photographs examined by YOU in connection with the Flight Operations investigation CONCERNING the FLIGHT IN QUESTION.

Response:

**Request No. 28:**

Produce the camara or device used to take the photographs examined by YOU in connection with teh Flight Operations investigation CONCERNING the FLIGHT IN QUESTION.

Response:

**Request No. 29:**

Produce all COMMUNICATIONS during the period beginning on December 4, 2007, and ending on March 10, 2010, between YOU and Craig Vezina CONCERNING the FLIGHT IN QUESTION.

Response:

**Request No. 30:**

Produce all DOCUMENTS CONCERNING the Internal Audit Committee investigation CONCERNING the FLIGHT IN QUESTION.

Response:


**Request No. 31:**

Produce all COMMUNICATIONS CONCERNING the Internal Audit Committee investigation CONCERNING the FLIGHT IN QUESTION.

Response:


**Request No. 32:**

Produce all DOCUMENTS CONCERNING statements or testimony of the two deadheading SWA pilots on the FLIGHT IN QUESTION who allegedly noted snow on the right wing of the aircraft, but didnt report it to the flight crew because they thought they were going to deice prior to takeoff.

Response:


**Request No. 33:**

Produce all DOCUMENTS examined or reviewed by HOU Flight Ops CONCERNING the HOU Flight Ops investigation conducted in connection with the FLIGHT IN QUESTION.

Response:

13

**Request No. 34:**

Produce the HOU Flight Ops report CONCERNING the HOU Flight Ops investigation conducted in connection with the FLIGHT IN QUES-TION.

Response:

**Request No. 35:**

Produce all DOCUMENTS relied upon by the HOU Flight Ops personnel who determined on December 6, 2007, to pursue the issues relating to the FLIGHT IN QUESTOIN with SWA Flight Ops.

Response:

**Request No. 36:**

Produce both reports identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL  BNA) and ASAP" as being filed "about 20 minutes apart just before midnight on 6 December."

Response:

**Request No. 37:**

Produce the ASAP reports filed by the other crew — identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL  BNA) and ASAP" — who had taken off a little after the FLIGHT IN QUESTION, who were called approximately 60 days after the FLIGHT IN QUESTION, advised to file an ASAP, and accepted into the program.

Response:

14

**Request No. 38:**

Produce all DOCUMENTS CONCERNING ASAP reports (excluding the ASAP reports themselves) filed by the other crew — identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL BNA) and ASAP" — who had taken off a little after the FLIGHT IN QUESTION, who were called approximately 60 days after the FLIGHT IN QUESTION, advised to file an ASAP, and accepted into the program.

Response:

**Request No. 39:**

Produce a copy of the computer software code — identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL BNA) and ASAP" — as it existed on December 6, 2007.

Response:

**Request No. 40:**

Produce all DOCUMENTS CONCERNING changes made to the computer software code — identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL BNA) and ASAP" — after December 5, 2007.

Response:

**Request No. 41:**

Produce all service or work orders and corresponding receipts CONCERNING the computer software code — identified by the "IAC Report on Flt 3839, 5 December 2007 (PHL BNA) and ASAP" — for period beginning December 5, 2006, and ending December 5, 2008.

Response:

15

**Request No. 42:**

 Produce all DOCUMENTS examined or reviewed by the ERT CON-CERNING its decision to reopen Janice McCalls ASAP case CON-CERNING the FLIGHT IN QUESTION.

 Response:

**Request No. 43:**

 Produce all DOCUMENTS CONCERNING information received by YOU, either directly or indirectly, from the flight attendants and the deadheading crew onboard the FLIGHT IN QUESTION.

 Response:

**Request No. 44:**

 Produce all DOCUMENTS CONCERNING the two meetings held in 2007 between SWAPA, or its representatives, and YOU or YOUR designated officials pursuant to COLLECTIVE BARGAINING AGREEMENT §B.1

 Response:

**Request No. 45:**

 Produce all DOCUMENTS CONCERNING disciplinary proceedings or other derogatory material placed in Janice McCalls EMPLOYMENT FILE pursuant to the COLLECTIVE BARGAINING AGREEMENT §B.2 disciplinary procedures.

 Response:

**Request No. 46:**

Produce all DOCUMENTS CONCERNING action(s) taken by the Military Resolution Board (MRB) — including all coordination efforts with the Chief Pilot, Janice McCall (the military guard/reserve pilot) and the President of SWAPA (or his designee) — in connection with Janice McCalls pay.

Response:

**Request No. 47:**

Produce all DOCUMENTS CONCERNING COMMUNICATIONS and all COMMUNICATIONS made by members of Flight Operations to members of the SWAPA Safety Committee in connection with the FLIGHT IN QUESTION.

Response:

**Request No. 48:**

Produce all DOCUMENTS CONCERNING COMMUNICATIONS, and all COMMUNICATIONS made by members of Flight Operations to members of the SWAPA Jumpseat Committee in connection with the FLIGHT IN QUESTION.

Response:

**Request No. 49:**

Produce all DOCUMENTS received by YOUR Operational Safety Team pursuant to YOUR Safety Program Manual Chapter 9: Data Analysis, CONCERNING the FLIGHT IN QUESTION.

Response:

17

**Request No. 50:**

    Produce YOUR investigation summaries of all incidents CONCERN-ING deicing which appear in YOUR "Safety Report" identified by YOUR Safety Manual, Chapter 9: Data Analysis for the period be-ginning December 5, 2005, and ending August 14, 2009.

    Response:

**Request No. 51:**

    With the exception of YOUR investigation summaries of all deicing related incidents for the period beginning December 5, 2005, and ending August 14, 2009, Produce the "Safety Report" identified by YOUR Safety Manual, Chapter 9: Data Analysis, in its entirety.

    Response:

**Request No. 52:**

    Produce all DOCUMENTS CONCERNING information compiled or received, either directly or indirectly, by YOU — pursuant to the Oper-ational Safety Investigations, Surveys, and Studies provisions of YOUR Safety Manual, Chapter 8.7.4 — in connection with the FLIGHT IN QUESTION.

    Response:

**Request No. 53:**

    Produce the Master File/Package(s) created by YOU — pursuant to YOUR Safety Manual, Chapter 8.8.1 — for any investigation YOU conducted CONCERNING the FLIGHT IN QUESTION.

    Response:

18

**Request No. 54:**

Produce the Report(s) created by YOU — pursuant to YOUR Safety Manual, Chapter 8.8.2 — for any investigation YOU conducted CONCERNING the FLIGHT IN QUESTION.

Response:

**Request No. 55:**

Produce all DOCUMENTS CONCERNING the report entitled "IAC Report on Flt 3839, 5 December 2007 (PHL-BNA) and ASAP."

Response:

**Request No. 56:**

Produce all DOCUMENTS CONCERNING punishment to YOUR pilots CONCERNING failure to de-ice.

Response:

**Request No. 57:**

Produce all DOCUMENTS CONCERNING punishment to YOUR pilots CONCERNING taking-off with wing contamination.

Response:

SWA App. 20

**Request No. 58:**

Produce all DOCUMENTS CONCERNING Southwests policy govern-
ing de-icing during the FLIGHT IN QUESTION.

Response:

**Request No. 59:**

Produce all Irregularity Reports CONCERNING the FLIGHT IN QUES-
TION.

Response:

**Request No. 60:**

Produce all DOCUMENTS CONCERNING snow accumulation on the
wings of the FLIGHT IN QUESTION.

Response:

**Request No. 61:**

Produce the ASAP memorandum of understanding in force during the
FLIGHT IN QUESTION.

Response:

20

**Request No. 62:**

Produce all DOCUMENTS and COMMUNICATIONS CONCERN-
ING Janices McCalls ASAP Event Review Team interview on Decem-
ber 20, 2007.

Response:

**Request No. 63:**

Provide all DOCUMENTS CONCERNING the termination of Captain
Jim Austin's employment by Southwest Airlines Co.

Response:

**Request No. 64:**

Produce all DOCUMENTS CONCERNING Janice McCalls removal
from the ASAP program.

Response:

**Request No. 65:**

Produce a copy of Southwest Airlines Pilots Associations Constitution
and Bylaws in force during the FLIGHT IN QUESTION.

Response:

21

**Request No. 66:**

Produce all DOCUMENTS CONCERNING Janice McCalls second ASAP Event Review Team.

Response:

**Request No. 67:**

Produce all DOCUMENTS other than those involving the FLIGHT IN QUESTION CONCERNING pilots being accepted then rejected from the ASAP program.

Response:

**Request No. 68:**

Produce all DOCUMENTS CONCERNING the May 2008 SWAPA Board of Directors meeting.

Response:

**Request No. 69:**

Produce all DOCUMENTS CONCERNING material submitted during the ASAP process for the FLIGHT IN QUESTION published on the SWALife webpage during the period of time beginning on December 5, 2007 and ending on August 14, 2009.

Response:

22

**Request No. 70:**

Produce all DOCUMENTS CONCERNING the characterization of the FLIGHT IN QUESTION as involving an administrative issue.

Response:

**Request No. 71:**

Produce all DOCUMENTS CONCERNING any change in Southwests de-icing procedure after the FLIGHT IN QUESTION.

Response:

**Request No. 72:**

Produce all DOCUMENTS CONCERNING Monty Sparks encouraging Janice McCall to apologize for events CONCERNING THE FLIGHT IN QUESTION.

Response:

**Request No. 73:**

Produce all DOCUMENTS CONCERNING Len Legge encouraging Janice McCall to apologize for events CONCERNING THE FLIGHT IN QUESTION.

Response:

SWA App. 24

**Request No. 74:**

Produce all DOCUMENTS CONCERNING Ted Lawson encouraging Janice McCall to apologize for events CONCERNING THE FLIGHT IN QUESTION.

Response:

**Request No. 75:**

Produce all DOCUMENTS CONCERNING anyone PERSON encouraging Janice McCall apologize for events CONCERNING THE FLIGHT IN QUESTION.

Response:

**Request No. 76:**

Produce all DOCUMENTS and COMMUNICATIONS CONCERNING any attempt to elicit false testimony from Janice McCall against Jim Austin.

Response:

**Request No. 77:**

Produce all DOCUMENTS and COMMUNICATIONS that YOU received from Condon & Forsyth LLP, CONCERNING National Transportation Safety Board Docket Nos. SE-18616 or SE-18607.

Response:

24

**Request No. 78:**

    Produce all DOCUMENTS that YOU received from SWAPA CON-CERNING Janice McCall's termination grievance.

    Response:

**Request No. 79:**

    Produce all DOCUMENTS and COMMUNICATIONS that YOU received from Condon & Forsyth LLP, the subject matter of which CON-CERNS Janice McCall.

    Response:

**Request No. 80:**

    Produce all non-privileged DOCUMENTS and COMMUNICATIONS that YOU received from Teri Curro, the subject matter of which is Janice McCall.

    Response:

**Request No. 81:**

    Produce all non-privileged emails that YOU received from email addresses containing "@SWAPA.org", the subject matter of which CON-CERNS Janice McCall.

    Response:

**Request No. 82:**

Produce all DOCUMENTS and COMMUNICATIONS provided to the Federal Aviation Administration or the Department of Transportation CONCERNING to the FLIGHT IN QUESTION.

Response:

**Request No. 83:**

Produce all DOCUMENTS and COMMUNICATIONS YOU recieved from Jeff Hefner concerning the FLIGHT IN QUESTION.

Response:

**Request No. 84:**

Produce all DOCUMENTS and COMMUNICATIONS between you and the Federal Aviation Administration CONCERNING Flight 1608/AC #396, Februrary 8, 2005.

Response:

**Request No. 85:**

Produce all DOCUMENTS CONCERING training that FAA inspector Griewahn recieved at or from Southwest Airlines Co.

Response:

**Request No. 86:**

Produce all DOCUMENTS and COMMUNICATIONS between YOUR Flight Operations department and SWAPA regarding the reinstatement Janice McCall.

26

Response:


**Request No. 87:**

Produce all DOCUMENTS and COMMNICATIONS between YOU and Boeing CONCERNING cold-soaked fuel frost.

Response:


**Request No. 88:**

Produce all DOCUMENTS and COMMNICATIONS between YOU and Boeing CONCERNING deicing procedures.

Response:


**Request No. 89:**

Produce all DOCUMENTS and COMMNICATIONS between YOU and Boeing CONCERNING delamination of controls surfaces and wing skin.

Response:


**Request No. 90:**

Produce all COMMUNICATIONS of Chuck Magill and his staff between January 10, 2008, and January 22, 2008.

Response:


27

**Request No. 91:**

 Produce all DOCUMENTS CONCERNING Captain Roper's training or qualification to conduct a safety investigation.

 Response:

**Request No. 92:**

 Produce all DOCUMENTS and COMMUNICATIONS CONCERN-ING any attempt by YOU to contact the actual crew of the FLIGHT IN QUESTION during YOUR investigation(s) CONCERNING THE FLIGHT IN QUESTION.

 Response:

**Request No. 93:**

 Produce all DOCUMENTS and COMMUNICATIONS between YOU and Captain Rick Lathan CONCERNING the FLIGHT IN QUES-TION.

 Response:

**Request No. 94:**

 Produce all DOCUMENTS and COMMUNICATIONS between YOU and Captain Rick Lathan CONCERNING the FLIGHT IN QUES-TION.

 Response:

SWA App. 29

**Request No. 95:**

PRODUCE all DOCUMENTS concerning the removal of visual iden-
tification strips from Boeing 737s after YOU purchased those aircraft.

Response:


**Request No. 96:**

Produce one DOCUMENT, or if more are necessary then only as many
as are necessary, IDENTIFYING each of YOUR aircraft which deiced
on the date of the FLIGHT IN QUESTION.

Response:


**Request No. 97:**

Produce all DOCUMENTS CONCERNING duties and responsibilities
of YOUR deadheading pilots.

Response:


**Request No. 98:**

Produce all DOCUMENTS and COMMUNICATIONS CONCERN-
ING a security risk posed by YOUR Flight Operations Manual over-
wing exit inspection after engine start.

Response:


**Request No. 99:**

Produce all DOCUMENTS CONCERNING YOUR interview of Air-
man Becky Sparks in connection with a pilot taking off with ice on the
wings after Ms. Sparks informed the pilot of the ice.

29

Response:


**Request No. 100:**

Produce all DOCUMENTS CONCERNING your investigation of a Captain in connection with a high-speed dive — which jeopardized the structural integrity of the aircraft's wings — in order to comply with an altitude restriction.

Response:


**Request No. 101:**

Produce all DOCUMENTS CONCERNING the incident where Deadheading First Officer Lee Jay Sewell (employee# 68223) notified a crew that they had contamination on the wing and they took off anyway.

Response:


30

DATED: March 13, 2010.

Respectfully submitted,


/s/Noah D. Radbil
_____
Noah D. Radbil
Texas Bar No. 24071015
radbil@camarasibley.com
K.A.D. Camara
Texas Bar No. 24062646
camara@camarasibley.com
CAMARA & SIBLEY LLP
2339 University Boulevard
Houston, Texas 77005
713-893-7973 (phone)
713-583-1131 (fax)

*Attorneys for Plaintiff Janice McCall*

31

## Certificate of service

I hereby certify that, on March 13, 2010, I served this document on counsel for Defendant Southwest Airlines Co., and counsel for Defendant Southwest Airlines Pilots' Association as follows by Certified U.S. Mail Return Receipt Requested.


J. Richard Hammett
Liquita Lewis Thompson
Baker & McKenzie LLP
711 Louisiana, Suite 3400
Houston, Texas 77002

Hal K. Gillespie
M. Jeannette Fedele
Gillespie, Rozen, Watsky & Jones PC
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204


/s/Noah D. Radbil
Noah D. Radbil

32

SWA App. 33

 

# Aviation Safety Action Partnership (ASAP)

# Memorandum Of Understanding Between Southwest Airlines, Federal Aviation Administration, And Southwest Airlines Pilots' Association

# Revision 3



# Table of Contents

Terms and Abbreviations ............................................................................................ 1

I.   **Preamble** ................................................................................................... 3
    1.1   Introduction .................................................................................. 3
    1.2   Objectives .................................................................................... 3
    1.3   Other Pilot Reporting Programs and Voluntary Disclosure ........................... 3
    1.4   American Airlines Aviation Safety Action Partnership (ASAP) .................... 4
    1.5   Accident Prevention ....................................................................... 5
    1.6   Corrective Action Based Incentives and Sole-Source Reporting ................. 5
    1.7   Integration of Southwest Airlines Voluntary Aviation Safety Information
        (VASI) Programs ........................................................................... 6
    1.8   Advisory Circular Guidance ............................................................. 6
    1.9   Responsibilities and Commitment ..................................................... 7

II.  **Program Description** ........................................................................... 8
    2.1   Organization and Applicability ......................................................... 8
    2.2   Oversight Responsibility ................................................................. 8
    2.3   Southwest Airlines ASAP Manager--Responsibilities and Coordination ....... 8
    2.4   Event Review Team (ERT) ................................................................ 8
    2.5   Consensus of the ERT .................................................................... 9
    2.6   Event Reports .............................................................................. 9
    2.7   ERT Review and Corrective Action Recommendations ........................... 10
    2.8   NASA ASRS Participation ............................................................... 11
    2.9   Corrective Action and Administrative Closure ..................................... 11
    2.10  FAA Investigative Jurisdiction and Responsibility ................................ 12
    2.11  Voluntary Disclosure of a Possible Violation by Certificated Employees .... 13
    2.12  Sole-Source Reports ..................................................................... 14
    2.13  Reporting Procedures ................................................................... 14
    2.14  Acceptance Criteria ..................................................................... 15
    2.15  Reports Involving Criminal Activity, Substance Abuse or Intentional
         Falsification .............................................................................. 16
    2.16  Excluded Reports ........................................................................ 16
    2.17  Re-Opening Reports Based on New Evidence ...................................... 16
    2.18  Enforcement Policy for Reports Excluded Under ASAP ........................... 17
    2.19  Non-Reporting Employees Covered Under the MOU ............................. 17
    2.20  Non-Reporting Employees Not Covered Under the MOU ........................ 18
    2.21  Medical and Proficiency-Related Events ........................................... 18
    2.22  Shared Responsibility and the Air Carrier Voluntary Disclosure Program .. 19

i

2.23    ASAP Training Policy ........................................................... 19

2.24    Feedback into Training, Technical and Airline Operations ......................... 19

2.25    Accidents and Incidents ...................................................... 19

**III. Data and Information Policy** ............................................................. **21**

3.1    Data and Information Reporting Systems .................................... 21

3.2    Analyses, Reviews, Updates and Audits .................................... 21

3.3    Program Measurement and Reports to the FAA .......................... 22

3.4    Observer and Guest Participation ............................................ 22

3.5    Record Keeping, Administration, Custody, and Dissemination ................ 22

3.6    Report Routing and Confidentiality .......................................... 23

3.7    Amendments and Revision Control .......................................... 24

3.8    Duration and Termination ....................................................... 24

**IV. Summary and Signatures** .............................................................. **25**

4.1    Summary .......................................................................... 25

4.2    Signatures ........................................................................ 25

ii

# List of Effective Pages

MOU Revision 3 ..................................6/1/2007 ......................................................... 2

MOU Revision 3 ..................................6/1/2007 ......................................................... 3

MOU Revision 3 ..................................6/1/2007 ......................................................... 4

MOU Revision 3 ..................................6/1/2007 ......................................................... 5

MOU Revision 3 ..................................6/1/2007 ......................................................... 6

MOU Revision 3 ..................................6/1/2007 ......................................................... 7

MOU Revision 3 ..................................6/1/2007 ......................................................... 8

MOU Revision 3 ..................................6/1/2007 ......................................................... 9

MOU Revision 3 ..................................6/1/2007 ....................................................... 10

MOU Revision 3 ..................................6/1/2007 ....................................................... 11

MOU Revision 3 ..................................6/1/2007 ....................................................... 12

MOU Revision 3 ..................................6/1/2007 ....................................................... 13

MOU Revision 3 ..................................6/1/2007 ....................................................... 14

MOU Revision 3 ..................................6/1/2007 ....................................................... 15

MOU Revision 3 ..................................6/1/2007 ....................................................... 16

MOU Revision 3 ..................................6/1/2007 ....................................................... 17

MOU Revision 3 ..................................6/1/2007 ....................................................... 18

MOU Revision 3 ..................................6/1/2007 ....................................................... 19

MOU Revision 3 ..................................6/1/2007 ....................................................... 20

MOU Revision 3 ..................................6/1/2007 ....................................................... 21

MOU Revision 3 ..................................6/1/2007 ....................................................... 22

MOU Revision 3 ..................................6/1/2007 ....................................................... 23

MOU Revision 3 ..................................6/1/2007 ....................................................... 24

MOU Revision 3 ..................................6/1/2007 ....................................................... 25

SWA App. 37

# Terms and Abbreviations

AC ................................................ FAA Advisory Circular

Administrative Action .................. A means for disposing of violations or alleged violations that do not warrant the use of enforcement sanctions. The three types of administrative actions are, a letter of No Action, letter of Correction and a Warning Notice

ASAP ........................................... Aviation Safety Action Partnership

ASRP ........................................... Aviation Safety Reporting Program

ASRS ........................................... Aviation Safety Reporting System (NASA)

ATC ............................................. Air Traffic Control

Certificated employees ............... Southwest Airlines Pilots, certificated by the FAA

CFR.............................................. Code of Federal Regulations

CMO............................................. Certificate Management Office

Company...................................... Southwest Airlines

Consensus................................... Voluntary agreement of all three ERT representatives

EDT .............................................. Enforcement Decision Tool

ERT.............................................. Event Review Team

ERT Response............................. message to an ASAP reporter citing corrective action and/or administrative closure

FAA .............................................. Federal Aviation Administration

FAR.............................................. Federal Aviation Regulations - refers to all Subchapters and Parts within Title 14 - Code of Federal Regulations, Aeronautics and Space, Chapter I - Federal Aviation Administration, Department of Transportation

FDAP ........................................... Flight Data Analysis Program

FOIA............................................. Freedom of Information Act

FOM............................................. Flight Operations Manual

FSDO ........................................... Flight Standards District Office

ICAO ............................................ International Civil Aviation Organization

LOC.............................................. FAA Letter of Correction

LONA ........................................... FAA Letter of No Action

M&E ............................................. Southwest Airlines Maintenance and Engineering Department

MOU............................................. Memorandum of Understanding

NTSB ........................................... National Transportation Safety Board

NAS.............................................. National Airspace System

NASA ........................................... National Aeronautics and Space Administration

Non-certificated employees ......... Southwest Airlines employees not certificated by the FAA

Regulations.................................. Title 14, Code of Federal Regulations

SWA............................................. Southwest Airlines

SWAPA ........................................ Southwest Airlines Pilot Association

SWA App. 38

VASI programs ............................ Southwest Airlines Voluntary Aviation Safety Information
                                          programs
WN ................................................ FAA Warning Notice

SWA App. 39

# I    Preamble

## 1.1    Introduction

Southwest Airlines Aviation Safety Action Partnership (ASAP) began July 27, 2000 when the first ASAP Memorandum of Understanding was signed by officials from Southwest Airlines (SWA), the Southwest Airlines Pilot Association (SWAPA), and the Federal Aviation Administration (FAA) as an eighteen-month demonstration program. On June 6, 2002 the demonstration program ended and the CONTINUING PROGRAM began.  All parties agreed that the ASAP program provided significant accident and incident prevention results.  This Memorandum of Understanding renews ASAP as a continuing accident prevention program.

## 1.2    Objectives

The objective of the Southwest Airlines Aviation Safety Action Partnership is to prevent accidents and incidents.  We accomplish this objective by identifying flight safety concerns and achieving corrective action.  ASAP analyzes risks, increases education and awareness, validates program effectiveness, measures system performance and ensures accountability.  The result is increased compliance with the FARs.  The scope of events that are considered under ASAP include any observation that highlights a potential flight safety concern.  The actions taken in this program reflect the desire of all parties to voluntarily solve problems rather than to take formal legal enforcement or Company disciplinary action against an employee.  ASAP combines essential elements of previous self-reporting programs and provides solutions to the identified hazards in order to prevent incidents and accidents.

## 1.3    Other Pilot Reporting Programs and Voluntary Disclosure

Events occur in the National Airspace System each day that highlight potential safety problems.  Timely and accurate reporting of these events is essential to flight safety analysis and corrective action.  Prior to ASAP, three programs in particular proved the advantages of self-reporting in the United States: the NASA Aviation Safety Reporting System (ASRS), the US Air Altitude Awareness Program and the Air Carrier Voluntary Disclosure Reporting Program.  Each of these programs has proven uniquely valuable in identifying common and potential safety concerns.  However, their overall success has been limited by a variety of constraints.

Aviation Safety Reporting Program (ASRP) was established in 1975 to identify potential safety problems while providing limited protections to airmen reporting under provisions of 14 CFR Part 91.25.  Since its inception, ASRP has received and processed hundreds of thousands of confidential reports.  Its value as an aviation safety research database is recognized worldwide.  However, due to the requirements of confidentiality and jurisdiction, its ability to *correct* identifiable airline hazards is severely limited.  Prior to ASAP, many

SWA App. 40

events, which were reported to ASRP, did not come to the attention of the FAA or Southwest Airlines. Data from ASRP implied that numerous significant events were occurring in the National Airspace System and went unrecognized by the airlines. Yet typically, ASRP cannot report details of specific events to the airlines or the FAA, and the individual airmen involved were unlikely to report them to anyone other than ASRP prior to ASAP. Therefore, the analyses of these events were not readily available to those who could take preventive and corrective action.

The US Air Altitude Awareness Program expanded the concept of pilot reporting to corrective and preventive action. US Air and the Air Line Pilots Association (ALPA), working jointly with the FAA, developed a pilot reporting program designed to examine and reduce the number of altitude deviations occurring at US Air. The program proved highly successful, both in its analysis of the causes of these events and in reducing their frequency. The program also validated the ASRP concept of pilot self-reporting programs as enhancements to safety. The result was a proactive approach to finding solutions to a specific problem. Although highly successful, this innovative test program was limited in duration and stopped short of addressing other safety-related concerns.

Similarly, the Air Carrier Voluntary Disclosure Reporting Program, established in 1990 has been successful in providing a framework for cooperation between the FAA and individual air carriers. Under this program, Southwest and other airlines have detected errors and reported both problems and comprehensive fixes to the FAA. This cooperative relationship has resolved several potentially serious safety problems. However, many significant operational events remain ineligible under this program due to the exclusion of individual airmen by the Advisory Circular, except under special circumstances. Extension of the spirit and application of the program to individual employees under ASAP has produced greater enhancement to safety within the National Airspace System by providing the FAA a clearer view of the scope and frequency of flight safety concerns.

## 1.4    American Airlines Aviation Safety Action Partnership (ASAP)

The American Airlines Aviation Safety Action Partnership (ASAP) was introduced to the aviation industry on April 4, 1994 when the first ASAP Memorandum of Understanding was signed by officials from American Airlines (AA), the Allied Pilots Association (APA) and the FAA. Their ASAP program began as an eighteen-month demonstration program for flight crewmembers on June 1, 1994 and was renewed with annual extensions following its initial evaluation period. Periodic reviews were conducted at six-month intervals to evaluate the program and measure its effectiveness in achieving the desired goals and objectives. All parties agreed that the ASAP program provided significant accident and incident prevention results.

## 1.5    Accident Prevention

Recently, public attention has turned to the annual rate of aviation accidents worldwide. Although downward trends in hull losses per million cycles have been noted in certain years, other years have produced dramatic increases in accidents involving passenger injuries and/or fatalities. The worldwide aviation accident rate has not declined in recent years and is a growing concern due to the projected annual increase in the total number of flights.

Historically, airlines and government aviation authorities have acquired limited knowledge of aviation safety by examining failures through accident investigation or enforcement of rules and regulations. Corrective actions in many cases are limited to individual operators and specific events. Although these responses to known flight safety concerns have had measurable success in the past, greater threats may lie outside our traditional realm of knowledge. Our challenge is to identify precursors that can lead to accidents. If the global aviation accident rate is to be significantly reduced, we must continue to develop enhanced prevention strategies that identify risks and accomplish corrective actions.

ASAP prevents accidents and incidents through the following essential steps:

- Identifying hazards
- Analyzing risks
- Accomplishing corrective actions
- Validating and verifying effectiveness
- Educating and increasing employee awareness
- Measuring overall system performance
- Ensuring a continuing system of accountability

The program objectives are served only after all steps have been accomplished. However, risk identification and corrective action are the most critical and important steps in achieving accident prevention.

## 1.6    Corrective Action Based Incentives and Sole-Source Reporting

The key ingredient to risk identification and corrective action is to provide incentive for individuals and air carriers to report those events that pose flight safety concerns. In order to ensure the benefit of self-reporting, the FAA offers certain non-punitive enforcement-related incentives to encourage individual employees and the certificate-holding airline to report incidents of inadvertent non-compliance with the regulations. ASAP is based on the principles of identification and corrective action rather than immunity. ASAP offers an alternative to traditional FAA legal enforcement and Company disciplinary action. In cases where an individual meets the criteria for participation and complies with the corrective actions recommended by the ERT, the event is closed with administrative action or no action in lieu of legal enforcement.

SWA App. 42

The FAA, Southwest Airlines and SWAPA recognize the concept of **sole-source reporting** (see Section 2.11). For the purpose of ASAP, the FAA considers a report to be sole-source when all evidence of the event is discovered by or otherwise predicated on the report. It is possible to have more than one sole-source report for the same event. (A **sole-source** report is not considered to be **sufficient evidence**, as defined in FAA Advisory Circular 120-66 as amended, as "evidence gathered by an investigation not caused by, or otherwise predicated on, the individual's safety-related report.")

In addition, ASAP is dedicated to a non-disciplinary approach to corrective action whenever data and information that would not have been known otherwise is received from an individual employee through any voluntary airline safety program.  In no instance shall data and information gathered by these voluntary flight safety programs be used to initiate or support any Company disciplinary action.

### 1.7    Integration of Southwest Airlines Voluntary Aviation Safety Information (VASI) Programs

ASAP is an important member of a successful family of voluntary safety programs at Southwest Airlines.  The Southwest Airlines Voluntary Aviation Safety Information (VASI) programs consist of the following integrated flight safety efforts:

- Aviation Safety Action Programs (FAA Advisory Circular 120-66 as amended)
- NASA Aviation Safety Reporting Program (FAA Advisory Circular 00-46 as amended, 14 CFR Part 91.25)
- Air Carrier Voluntary Disclosure Reporting Program (FAA Advisory Circular 00-58 as amended)
- Air Carrier Internal Evaluation Program (FAA Advisory Circular 120-59 as amended)

These programs represent Southwest Airlines' comprehensive approach to airline safety and security.  The partnership process includes the collective response to identify safety concerns and to accomplish corrective action.  Safety reports and information arising from one program often requires coordination and accountability with other programs and other departments.  Recognizing that the operational environments may differ between departments, the airline's overall responsibility to ensure safety remains constant. Southwest Airlines' commitment to the partnership process to ensure safety is reflected in the integration of ASAP with the other VASI programs.

### 1.8    Advisory Circular Guidance

The following description of the FAA advisory circular system is given in AC 00-2.12 as amended:

> The FAA issues advisory circulars to inform the aviation public in a systematic

way of nonregulatory material.  Unless incorporated into a regulation by refer-
ence, the contents of an advisory circular are not binding on the public.  ACs are
issued in a numbered-subject system corresponding to the subject areas of the
Title 14, Code of Federal Regulations, Chapter I, Federal Aviation Administra-
tion.  An AC is issued to provide guidance and information in a designated sub-
ject area or to show a method acceptable to the Administrator for complying with
regulations.

This MOU refers to FAA advisory circulars while expanding upon the guidance contained
therein to provide enhanced methods of compliance and accident and incident prevention.

## 1.9    Responsibilities and Commitment

Southwest Airlines' management is committed to fostering a successful safety culture
through ASAP based on the belief that the most effective approach to flight safety utilizes
all available resources through integration and collective response.  Recognizing that a
successful airline depends upon the commitment to safety upheld by each employee and
Manager, the airline is responsible for maintaining a safety culture that promotes individual
awareness and accountability.  The SWA Flight Operations Department, as laid out in the
ASAP Memorandum of Understanding, educates and distributes information to its employ-
ees about the program.  The Managerial support provided will extend across all opera-
tional department boundaries to ensure the airline's overall responsibility and commitment.

Similarly, SWAPA shall commit to provide full support in order to promote membership par-
ticipation and instill confidence in the partnership process.  SWAPA shall fulfill its represen-
tational responsibilities by participating in a process that recognizes the safety value and
contributions provided by individuals.  SWAPA represents the commitment to safety held
by all Southwest Airlines pilots.

The FAA is committed to providing full partnership participation and management support
in order to maintain the level of trust and cooperation necessary to guarantee the success
of ASAP and other voluntary safety information programs.  The FAA's oversight effective-
ness using existing resources is greatly enhanced through voluntary flight safety pro-
grams.  As a result, the FAA gains a clearer view of the safety of airline operations and can
ensure broader compliance through corrective actions.

SWA App. 44

# II   Program Description

## 2.1   Organization and Applicability

Southwest Airlines, a Title 14 CFR Part 121 Air Carrier, is initiating ASAP in the Flight Operations Department to enhance the flight safety-related operations that can contribute to accident and incident prevention.  This Program Description serves as the model for the SWA Flight Operations Department ASAP program.  It includes essential elements of organization, policies and procedures necessary for program success.  The ASAP program operates independently as a partnership between SWAPA, Southwest Airlines and the FAA in accordance with this Program Description.

## 2.2   Oversight Responsibility

The oversight responsibility for the Flight Operations Department ASAP program lies with the SWAPA President, the SWA Executive Vice President and Chief of Operations and the FAA Principal Operations Inspector.

## 2.3   Southwest Airlines ASAP Manager--Responsibilities and Coordination

SWA Flight Operations Department must designate an ASAP Manager who is responsible for the administration of the ASAP program on behalf of SWA management and ensure compliance with this Memorandum of Understanding. Responsibilities include the timely dissemination of all ASAP reports to the Event Review Team (ERT), resolving safety-related concerns identified by the ERT recommendations, and providing for the continuous tracking and analysis of safety-related events.  The ASAP Manager ensures coordination with other SWA departments of all investigations and corrective actions on behalf of the ERT.  The ASAP Manager designates the primary and alternate Southwest Airlines representatives to the ERT.

The ASAP Manager is also responsible for providing administrative and staff support.  Program Coordinators and staff personnel assist the ERT through administration of the ASAP program.  This includes, but is not limited to, facilitating meetings, documenting recommendations and coordinating data and information requests in accordance with the Data and Information Policy section of the MOU. The Coordinators and staff assistants do not participate as members of the ERT.

## 2.4   Event Review Team (ERT)

The heart of ASAP is a three-member Event Review Team (ERT).  The ERT consists of one designated representative (with alternates) each from the FAA, Southwest Airlines and SWAPA.  The ERT makes all decisions regarding acceptance criteria and recommends corrective action solutions to reported flight safety concerns. For official meeting

purposes, a quorum exists when all three participating ERT members or their alternates are present.

The ERT designates individuals to be responsible for coordinating ASAP investigations and corrective actions with other parties, as appropriate.  These other parties include, but are not limited to, FAA Air Traffic Service, aircraft manufacturers, the NTSB, and other airlines and employee associations.

## 2.5    Consensus of the ERT

The success of ASAP is built on the trust and cooperation of the ERT in achieving a consensus on each event that is reported.  Under ASAP, the term *consensus* is defined as the voluntary agreement of all three ERT representatives.  A *consensus* means that all members support a particular decision or recommendation by the ERT.  The *consensus* applies to the ERT decision as to whether a report is accepted into the program as well as the corrective action recommendations arising from the event.  It does not require that all members believe that a particular decision or recommendation is the most desirable solution, but that the result falls within each member's range of acceptable solutions for that event and for continued program participation, since all parties agree on the goal of accident prevention through ASAP.

Recognizing that the FAA holds statutory authority to enforce the regulations and promote compliance, it is understood that the FAA retains all legal rights and responsibilities contained in Title 49 United States Code and FAA Order 2150.3 as amended.  In the event there is not a consensus of the ERT, the FAA ERT representative will decide how the report should be handled.  The FAA will not use the ASAP report in any subsequent enforcement action except as described in paragraph 11c (2) of AC 120-66 as amended.  All parties agree that a failure to reach a *consensus* on any event after all options have been explored shall be grounds for termination of the ASAP program.

## 2.6    Event Reports

In order to prevent accidents and incidents, two types of reports are considered for participation under ASAP:  (1) self-disclosure of a possible deviation, and (2) a general or specific flight safety concern.

<u>Possible Violations:</u>

If the individual employee believes the event may involve self-disclosure of a possible FAR violation, he or she must notify the ERT in accordance with section 2.14. The employee may make the initial notification of the event by telephone hotline to an ASAP Coordinator for inclusion into ASAP.  In all instances, the initial notification must be followed by written reports from each of the participating employees within five days of the event.  Each

SWA App. 46

employee involved must report to be eligible for participation in ASAP.  Reports associated with these self-disclosures will automatically be forwarded to the ERT.

General or Specific Flight Safety Concerns:

All eligible employees are encouraged to report any event or observation they feel identifies a potential hazard to flight operations and should be reviewed by the ERT.  All safety-related reports shall be fully evaluated and, to the extent appropriate, investigated by the ERT.  Although the 24-hour reporting requirement (section 2.14) need not apply to events that do not involve possible deviations, timely reporting is essential to corrective action in many instances.  Therefore, participating employees are encouraged to report such events and observations at the earliest possible time.  If the employee has any question as to whether the event involves a possible deviation, then he or she should report within the 24-hour reporting requirement.

## 2.7   ERT Review and Corrective Action Recommendations

Confidential ASAP reports are sent each business day in a secured manner to each representative of the ERT.  The ERT meets once per month, or more frequently if necessary, to review and investigate ASAP reports and to recommend procedural, policy, training or other solutions.  In some instances, telephone conferences may substitute for meetings.  All reports are de-identified (i.e., redacted, without the reporting employee's name) for initial ERT review.  The ERT may elect to contact an individual employee for further information.  Normally, the ASAP Manager or the designated representative member of the ERT makes the initial contact with the reporting employee.  If it is necessary to interview the reporting employee, additional representation may be obtained at the employee's request.

All ASAP reporters receive a minimum of two separate responses from the ERT; an acknowledgement of receipt, and a description of the corrective action and resulting administrative closure, or a reason why the report was excluded from the program.

In achieving corrective action, the ERT may provide data and/or information and possible solutions to the following, consistent with the Data and Information Policy section of this MOU:

- Southwest Airlines for improvements to policy, training, procedures and/or aircraft equipment modifications
- Individual employee for skill enhancement or additional training-to-proficiency
- Federal Aviation Administration and the National Transportation Safety Board for safety enhancement

Each ERT member is responsible for forwarding the possible solutions and corrective actions made to their respective organization and for providing feedback to the ERT. Failure of Southwest Airlines to follow through with corrective action acceptable to the FAA, to

resolve any safety deficiencies, will ordinarily result in termination of the program. Employees initially covered under an ASAP will be excluded from the program and not entitled to the enforcement-related incentive if they fail to complete the recommended corrective action in a manner satisfactory to all members of the ERT. (In those cases, failure of any individual to complete corrective action for an apparent violation, a qualification issue, or medical certification or medical qualification issue in a manner acceptable to all members of the ERT, may result in the reopening of the case and referral of the matter to the FAA for appropriate action).

## 2.8    NASA ASRS Participation

Submission to the NASA Aviation Safety Reporting System (ASRS) is guaranteed by Southwest Airlines on all ASAP reports.  (FAA Advisory Circular 00-46 as amended describes the NASA Aviation Safety Reporting Program).  Upon receipt of an ASAP report, a copy of the report is immediately forwarded to NASA for confidential participation in the ASRS.  The ASAP Manager assumes the responsibility of fulfilling the ten-day ASRS reporting requirement on all written reports submitted within five days of the reported event.  The reporting employee will receive an acknowledgement directly from NASA ASRS.

The primary purpose of ASAP's integration with NASA is to contribute to the worldwide aviation safety database at ASRS.  Information and analyses derived from such data continues to enhance aviation safety and accident prevention.  In addition, under ASRS, certain protection from FAA legal enforcement action is provided.

Title 14 CFR part 91.25 prohibits the use of any reports submitted to NASA under the ASRS (or information derived therefrom) in any enforcement action, except information concerning criminal offenses or accidents.

Upon the finding of a violation, imposition of a civil penalty or certificate suspension will be waived by the FAA if certain ASRS acceptance criteria are met.  Generally, the FAA will make the finding of the violation a matter of record for a period of five years.

**The waiver of imposition of sanction under ASRS is not exercised on any report that is accepted into ASAP by the ERT.  Under ASAP, the event is closed with corrective action through the FAA administrative process, rather than legal enforcement action.**

## 2.9    Corrective Action and Administrative Closure

One or more of the following will be used to close a report accepted into ASAP:
- ERT Response
- FAA Administrative Action (Warning Notice or Letter of Correction)
- Informal Action (written or oral counseling)

- FAA Letter of No Action
- The Report will be returned to the normal SWA Irregularity reporting program
- The Report will *not* be returned to the normal SWA Irregularity reporting program due to lack of consent of the reporting employee

The ASAP Manager is responsible for documenting the corrective actions achieved through ASAP and maintaining those records necessary for program administration. All record keeping shall be in accordance with the ASAP Data and Information Policy Section of the MOU.  Under ASAP, corrective action refers to the steps taken to prevent future occurrences similar to the reported event.  Most often, corrective action is achieved with the individual employee through a written response or as determined by the ERT.  In many instances, corrective action recommendations are made to the airline and the FAA.  ASAP reports are used for trends and the corrective action value is derived from aggregate analysis.

## 2.10   FAA Investigative Jurisdiction and Responsibility

By public law and FAA order, the FAA is responsible for the proper investigation and disposition of all suspected cases of non-compliance with the Federal Aviation Regulations. The FAA establishes investigative and enforcement jurisdiction and responsibility regarding events reported to the ASAP ERT.  The FAA ERT representative is empowered to complete ASAP investigations and is responsible for coordinating all corrective and administrative actions in accordance with:

- HBAT 00-08 as amended "Establishment of Aviation Safety Action Programs (ASAP)",
- Advisory Circular 120-66 as amended, "Aviation Safety Action Program",
- FAA Order 2150.3 as amended, "Compliance & Enforcement Program",
- FAA Order 8020.11 as amended, "Aircraft Accident & Incident Notification Investigation & Reporting",
- FAA Order 8400.10 as amended, "Air Transportation Operations Inspector's Handbook",
- FAA Order 8300.10 as amended, "Airworthiness Inspector's Handbook".

Once an event meets the criteria for participation and is accepted into ASAP by the ERT, the FAA shall transfer all jurisdiction and responsibility for compliance and enforcement investigations related to the event to the CMO.

The FAA's ability to investigate suspected instances of non-compliance is enhanced through ASAP.  ASAP offers the FAA the opportunity to learn about events that would have gone unrecognized otherwise.  The FAA may conduct an independent investigation of an event disclosed in a report. Additionally, the ASAP review process includes the ability to interview reporting employees and other employees and to utilize all the resources available to the airline and the participating employee's representative organization.  The FAA's

SWA App. 49

overall effectiveness in ensuring compliance is improved by combining the information gathered by geographic inspectors and FSDO with the data and information available through the ASAP process. The CMO and the FAA ERT representative are better able to ensure corrective action as a result of the investigation after all the available data and information has been gathered and analyzed. The ASAP process assists the FAA in the proactive prevention of accidents through the corrective actions applied to incidents and reported events.

### 2.11   Voluntary Disclosure of a Possible Violation by Certificated Employees

All parties to this agreement believe that the voluntary sharing of data and information disclosing possible violations combined with a cooperative, non-punitive approach to solving problems enhances and promotes aviation safety. **Resolution of reported events reflects emphasis on correction of the safety concerns rather than punitive action.**

An ASAP report involving a possible violation that satisfies all acceptance criteria contained in this MOU will receive one of the following closures in lieu of FAA legal enforcement action:

- Accepted **sole-source** reports are closed with an ERT response and corrective action if appropriate. This is a response to the reporter in letter form from the ERT.

- Accepted **non-sole-source** reports with sufficient evidence to support a violation are closed with one of two types of administration action:
  - FAA Letter of Correction (LOC) provided that corrective action with the individual employee is satisfactorily accomplished.
  - FAA Warning Notice (WN) where no corrective action is warranted with the individual employee.

- Informal Action (written or oral counseling) If sufficient evidence supports a violation for a non-sole-source report, the ERT may employ the EDT—Individual matrix and associated guidance (see Order 2150.3 as amended). The ERT uses the matrix to determine, through consensus under the ASAP process, whether the accepted non-sole-source ASAP report should be closed with administrative or informal action (and corrective action if appropriate).

- Accepted **non-sole-source** reports <u>without</u> sufficient evidence to support a violation are closed with a FAA Letter of No Action (LONA) after satisfactory completion of corrective action, if appropriate.

**Sufficient Evidence** means evidence gathered by an investigation not caused by, or otherwise predicated on the individual's ASAP report. There must be sufficient evidence to prove the violation, other than the individual's ASAP report. In order to be considered sufficient evidence under ASAP, the ERT must determine through consensus that the evi-

dence (other than the individual's ASAP report) would likely have resulted in FAA enforcement action had the individual's ASAP report not been accepted under ASAP.

Administrative action is not adjudication.  A LOC or WN does not constitute a finding of a violation.  The name of a recipient receiving either a FAA LOC or WN will be a temporary matter of FAA record for a period of two years, after which the name is expunged.  The name of a recipient of a FAA LONA will be temporary matter of record and the name is expunged within thirty days.  Neither the name of a recipient of an ERT response, nor the ERT response is made a matter of FAA record.

## 2.12    Sole-Source Reports

The FAA, Southwest Airlines, and SWAPA recognize the concept of **sole-source reporting** and provide incentive for employees to report events that might not have been disclosed otherwise.  An ASAP report is considered **sole-source** to the ERT when all evidence of the event available to the FAA outside of ASAP is discovered by or otherwise predicated on the ASAP event. In cases accepted into ASAP by the ERT where an employee is the **sole-source** of data and information indicating a possible violation, the event will be closed with an ERT Response and corrective action if appropriate.  In all events that are accepted into ASAP by the ERT, **sole-source** or otherwise, data and information from an employee's ASAP report or ERT investigation will not be used to initiate or support any Company disciplinary action or FAA legal action. The only exception are reports that appear to involve possible criminal activity, substance abuse, controlled substances, alcohol, or **intentional** falsification.

For the purposes of this program, a **sole-source report** that has been forwarded to another department remains a **sole-source report.**

## 2.13    Reporting Procedures

When a flight crewmember observes a safety problem or experiences an incident during flight, he or she should note the problem or incident and be able to describe it in enough detail so it can be evaluated by a third party.  For example, if the safety incident involves a deviation from an ATC clearance the pilot should note the date, time, place, altitude, flight number and ATC frequency, along with enough other information describing the incident and any perceived safety problem.  After the trip sequence is ended for that day, the flight crewmember should complete a Southwest Airlines ASAP form for each safety problem or call the ASAP hotline for initial notification.

If it appears that an employee may have intended to file an ASAP report, but submitted a traditional departmental report instead, the employee's management supervisor will advise the employee of the apparent error. If the employee agrees that it was his/her intention for the report to have been submitted under ASAP, the supervisor will reroute the report to the ASAP manager and instruct the employee to file an ASAP report refer-

SWA App. 51

encing the original tracking number of the traditional departmental report. For the purpose of determining timely submission of reports which are rerouted on that basis, the submission date/time for ASAP purposes will be same as the date/time that the traditional departmental report was originally submitted.

## 2.14   Acceptance Criteria

Each individual employee participating in ASAP must report separately and satisfy all applicable acceptance criteria as established by this MOU and determined by the consensus of the ERT. The following criteria apply for an individual employee who reports a possible violation of the Regulations or SWA Policy:

- Participation is limited to Southwest Airlines employees assigned to duties by Southwest Airlines and to events occurring while acting in that capacity

- The employee must voluntarily make the initial notification of a possible violation via the ASAP hotline or a submitted ASAP report as soon as possible after the event but no later than 24 hours after the event occurred.

  **Note:** If a report is submitted or notification is received later than 24 hours following the event, the ERT will review all available information to determine whether the employee knew or reasonably should have known about the possible deviation within 24 hours of its occurrence. If the ERT determines that the employee did not know or reasonably would not have known about the apparent deviation(s), then the report would be included in ASAP, provided all other ASAP acceptance criteria have been met.
  - If the employee knew or should have known about the apparent violation(s), then the report will not be included in ASAP.
  - However, the ERT may waive the 24-hour reporting requirement for sole-source reports that are solicited by the ERT because an event raises significant safety issues and it is essential to obtain this additional information to gain an understanding of the event. Sole-source reports obtained on this basis will be accepted under ASAP, provided that all other acceptance criteria are met.

- The alleged violation was inadvertent and not deliberate and does not involve apparent intentional disregard for safety or security.

- The reported event must not appear to involve criminal activity, substance abuse, controlled substances, alcohol, or intentional falsification.

- The reporting employee must satisfactorily comply with the corrective recommendations of the ERT, thereby demonstrating a constructive attitude toward complying with the regulations.

- Reports involving the same or similar alleged violations previously covered under ASAP that satisfy the acceptance criteria may also be covered under ASAP. The ERT will determine on a case-by-case basis whether such a report will be included in ASAP, based upon the facts and circumstances surrounding the alleged violation.

The ERT will be provided with a means of determining whether a report involves a repeat of the same or a similar alleged violation by the same employee previously covered under ASAP.

### 2.15   Reports Involving Criminal Activity, Substance Abuse or Intentional Falsification

ASAP reports that appear to involve possible criminal activity, substance abuse, controlled substances, alcohol, or intentional falsification will be referred to an appropriate FAA office. FAA may use such reports for any enforcement purposes and will refer such reports to law enforcement agencies as appropriate.

### 2.16   Excluded Reports

A report is excluded when:

- The report does not meet the ASAP acceptance criteria (as established by this MOU and determined by the ERT.)
- The report is excluded from ASAP by the ERT because an employee withdraws from ASAP.
- The employee is unable to successfully comply with the ERT recommendations.

Any safety related ASAP event that concerns an apparent violation that is excluded from ASAP would be referred to an appropriate office within the FAA for any additional investigation and re-examination and/or enforcement action, as appropriate. The FAA and/or company may pursue an investigation of an excluded event independently of ASAP. **However, except for the provisions of Section 2.15, contents of an ASAP report shall not be used to support any company disciplinary action, or as evidence in an FAA enforcement action.**

Except for the provisions of Section 2.15, in the instance that an excluded report involving an apparent intentional disregard for safety that does not demonstrate a lack or raise a question of a lack of qualification, medical certification or medical qualification is a **sole-source report** as determined by the ERT, then no more than administrative action may be taken by the FAA, provided the FAA subsequently verifies and produces evidence of the event other than the report itself.

### 2.17   Re-Opening Reports Based on New Evidence

A closed ASAP case including a related Enforcement Investigation Report (EIR) involving a violation addressed with the enforcement-related incentive, or for which no action has been taken, may be reopened and appropriate action taken if evidence later is discovered that establishes that the violation should have been excluded from the program.

**2.18   Enforcement Policy for Reports Excluded Under ASAP**

(a)   Reports involving intentional disregard for Safety:

   (i)   Alleged violations involving an apparent intentional disregard for safety that do not demonstrate a lack or raise a question of a lack of qualification, medical certification or medical qualification will be addressed with no more than administrative action, provided the ASAP reports are sole-source reports and provided the employee completes corrective action considered appropriate by the FAA. If the employee fails to complete corrective action, the alleged violation will be referred to the FAA office for any additional investigation, reexamination and/or enforcement action as appropriate.

   (ii)   Alleged violations involving an apparent intentional disregard for safety that demonstrate or raise a question of a lack of qualification will be referred to the FAA for any additional investigation, reexamination or enforcement action as appropriate.

(b)   Untimely reports:

   (i)   Reports that are excluded only because they are untimely that do not demonstrate a lack or raise a question of a lack of qualification, medical certification or medical qualification will be addressed with no more than administrative action, provided the ASAP reports are sole-source reports and provided the employee completes corrective action considered appropriate by the FAA. If the employee fails to complete corrective action,  the alleged violation will be referred to the FAA office for any additional investigation, reexamination and/or enforcement action as appropriate.

   (ii)   Alleged violations disclosed in reports that are excluded only because they are untimely that also demonstrate a lack, or raise a question of a lack of qualification or medical certification, or medical qualification will be referred to the appropriate office within the FAA for any additional investigation, and reexamination and/or enforcement action as appropriate.

**2.19   Non-Reporting Employees Covered Under the MOU**

If an ASAP report identifies another covered employee of Southwest Airlines in a possible violation, and that employee has not submitted a separate report, the ERT will determine on a case by case basis whether that employee knew or reasonably should have known about the possible violation.  If the ERT determines that the employee did not know or could not have known about the apparent violation(s), and the original report otherwise qualifies for inclusion under ASAP, the ERT will offer the non-reporting employee the opportunity to submit their own ASAP report. If the non-reporting  employee submits their own report within 24 hours of notification from the ERT, that report will be afforded the

SWA App. 54

same consideration under ASAP as the report from the original reporting employee, provided all other ASAP acceptance criteria are met. However, if the non-reporting employee fails to submit their own report within 24 hours of notification, the possible violation will be referred to the FAA office for additional investigation, reexamination and/or enforcement action, as appropriate, and for referral to law enforcement authorities, if warranted.

## 2.20   Non-Reporting Employees Not Covered Under the MOU

If an ASAP report identifies another employee of Southwest Airlines who is not covered under the MOU, and the report indicates that the employee may have been involved in a possible violation, the ERT will determine on a case-by-case basis whether it would be appropriate to offer that employee the opportunity to submit an ASAP report. If the ERT determines that it is appropriate, the ERT will provide that employee with information about ASAP and invite that employee to submit an ASAP report. If the employee submits an ASAP report within 24 hours of notification, that report will be covered under ASAP, provided all other ASAP acceptance criteria are met. If the employee fails to submit an ASAP report within 24 hours of notification, the possible violation by that employee will be referred to the FAA office for additional investigation, reexamination and/or enforcement action, as appropriate, and for referral to law enforcement agencies, if warranted.

In the event that an employee's report involving a possible violation indicates a shared or exclusive responsibility lies with individual employee(s) from another employee group or department, then a confidential copy of the de-identified report may be forwarded to the appropriate ASAP Manager for that employee group to investigate for consideration under ASAP.  The corrective action taken by other SWA ASAP programs are a result of, and the responsibility of, the respective ERT's consistent with the terms of their MOU.  For the purpose of this program, a sole-source report that has been forwarded to another department ASAP program remains a sole-source report.

## 2.21   Medical and Proficiency-Related Events

Both medical and proficiency-related events involving qualification issues may be addressed under ASAP provided all other acceptance criteria are met.  In all cases, an employee must successfully comply with all ERT recommendations to participate in the program.

When the ERT becomes aware of an issue involving the medical qualification or medical certification of an airman, the ERT must immediately advise the appropriate Regional Flight Surgeon about the issue.  The ERT will work with the Regional Flight Surgeon and Southwest Airlines medical department or medical consultants to resolve any medical certification or qualification issues revealed in an ASAP report or through the processing of that report.  The FAA ERT member must follow the direction(s) of the Regional Flight Surgeon with respect to any medical certification or medical qualification issue(s) revealed in an ASAP report.

SWA App. 55

Similarly, in instances where an employee is considered by the ERT to lack required job performance proficiency, the employee must successfully complete all training-to-proficiency recommended by the ERT before returning to duty.  Otherwise, the event is excluded from ASAP and Section 2.16 applies.

## 2.22   Shared Responsibility and the Air Carrier Voluntary Disclosure Program

Events involving possible noncompliance with 14 CFR  by Southwest  Airlines that are discovered under ASAP may be handled under the Voluntary Disclosure Policy, provided  that Southwest voluntarily reports the possible noncompliance to the FAA and that the other elements of that policy are met (See the current version  of  AC  00-58,  Voluntary  Disclosure Reporting Program, FAA Order 2150.3A,  Compliance  and  Enforcement  Program, and Compliance/Enforcement Bulletin No. 90-6.)

## 2.23   ASAP Training Policy

All SWA training sessions resulting from ASAP recommendations are conducted only on the skills related to the event reported.  All training is considered *No-Jeopardy*, rather than *checking* or *evaluations*.  No Proficiency, Competency, Oral or Line Checks are performed as a result of an ASAP report or investigation.  In many instances training sessions with reporting employees are used to validate or examine airline procedures, equipment and/or training techniques.

Participating employees must successfully complete the corrective actions recommended by the ERT in order to meet acceptance criteria.  In the event that an employee fails to meet the acceptance criteria, then the employee is excluded from ASAP and Section 2.16 applies.

## 2.24   Feedback into Training, Technical and Airline Operations

The ASAP Manager is responsible for ensuring that de-identified events, corrective actions, trends and analyses are made available for feedback into training, technical and operations, in accordance with the Data and Information Policy Section of this MOU.

## 2.25   Accidents and Incidents

With consensus of the ERT, the National Transportation Safety Board (NTSB) or other investigating authority may participate in an ASAP review process for the purposes of assisting in an accident or incident investigation, subject to the applicable terms and conditions of this agreement and to the extent allowed by law.

Accidents and incidents that are reported under ASAP are reviewed in compliance with federal and international law.  Events that are investigated as accidents or incidents by the NTSB in accordance with 49 CFR 831, and the Independent Safety Board Act of 1974, (49

SWA App. 56

U.S.C.1101 et seq.), are coordinated through the Southwest Airlines Flight Operations Department in accordance with Southwest Airlines regulations.  Events that occur in foreign territory under which the standards and recommended practices of the International Civil Aviation Organization (ICAO) apply are coordinated in accordance with ICAO Annex 13 and International Law.

Crewmember(s) involved in an event that is reported to ASAP and defined as an accident in 49 CFR Part 830, might not be accepted into ASAP. In the event of an accident, the ERT will determine on a case-by-case basis whether the crewmember(s) will be accepted into the program.

SWA App. 57

# III   Data and Information Policy

### 3.1   Data and Information Reporting Systems

The Flight Operations Department utilizes the confidential ASAP reports in accordance with this Memorandum of Understanding.  Additionally, an ASAP hotline is established to facilitate notification of events within the 24-hour reporting requirement.

Data and information is made available to all Southwest Airlines pilots about ASAP on a continuing basis through various mechanisms, including: initial and recurrent training, the Flight Operations Manual (FOM), letters, e-mail, bulletins, videos, Flight Operations and SWAPA publications, posters, and telephone hotline messages.

Summaries, trends and analyses are included in Flight Operations publications, which are published periodically and sent to all Southwest pilots.  The Flight Operations publication contains *de-identified* copies of selected ASAP reports and ERT responses.

- **Data** refers, but not limited to, all records, reports, facts, and quantitative details associated with an event.
- **Information** refers, but is not limited to, all summaries, analyses, and quantitative details derived from data.

### 3.2   Analyses, Reviews, Updates and Audits

The ASAP Manager is responsible for providing critical ASAP flight safety data and information to employees and Managers.  The primary goal is to achieve overall corrective action and accident prevention through increased awareness of ASAP events.

A Human Factors Analyst may be solicited to conduct independent human factor analyses of data and reports.  Information derived from these findings is presented to the ASAP ERT upon request.

Periodically, ASAP reviews and updates are sent to Southwest Airlines employees to raise safety awareness through the experiences of others.  These ASAP communication tools include bulletins (Alerts), posters, Read Before Fly, Crew Information Book, Safety Alerts, electronic mail, and newsletters.  Confidential, de-identified reports and analyses are published.

The Southwest Airlines Director of Safety is responsible for conducting independent audits of the Flight Operations ASAP program results.

SWA App. 58

### 3.3    Program Measurement and Reports to the FAA

The ASAP Manager is responsible for measuring and reporting ASAP program results to the FAA annually.  Additional reports and reviews will be made available as necessary and upon the request of the FAA. The results contain information regarding the volume of reports submitted to the program as well as descriptions of corrective action, recommendations and administrative closures.  Highlights of the report include human factors and safety analyses, categorization of events, trends, causal factors, and solutions to flight safety concerns.  Significant events and corrective actions are noted.  ASAP program effectiveness is evaluated using historical research techniques, operational performance criteria and system safety methodologies.  Effective measurement of program success, however, relies on the judgement and expertise of the safety professionals who oversee, manage, observe, audit and participate in the ongoing ASAP process.  The long-term goal of accident and incident prevention will eventually be validated in years to come by a meaningful reduction in accident rates.

### 3.4    Observer and Guest Participation

Any qualified observer or guest may participate in an ASAP meeting with the unanimous consent of the ERT.  Any observer or guest who attends an ASAP meeting must sign an ASAP Observer Consent Form and abide by the applicable conditions of the ASAP Memorandum of Understanding including the terms of confidentiality.

### 3.5    Record Keeping, Administration, Custody, and Dissemination

The Southwest Airlines ASAP Manager is responsible for the administration of all records, data and information generated in conjunction with the ASAP program.

Shared custody of ASAP reports (data and derived information) between the participating parties during an ongoing ERT investigation is required for program administration.  In addition, the FAA and SWAPA may maintain a de-identified event log in a format agreed to by the participating parties.  However, upon event administrative closure, all ASAP records and reports (other than the logs referred to in the preceding sentence) shall be returned to the Southwest Airlines ASAP Manager for record keeping in accordance with this MOU.

Dissemination of ASAP data and information, and the format in which it is released, in whole or in part, outside of the departmental ASAP program requires the joint consent of the Southwest Airlines ASAP Manager and SWAPA. All Southwest Airlines records and documents regarding this program will not be contrary to the regulations and the Pilot Records Improvement Act, AC 120-68 as amended.

Records, reports and analyses submitted to the FAA for review pursuant to the ASAP program are confidential, proprietary and protected to the extent allowed by law including, but

SWA App. 59

not limited to, all applicable exemptions under 14 CFR Part 193 (reference FAA order 8000.82).

## 3.6    Report Routing and Confidentiality

The SWA Flight Operations Department utilizes its own resources to send and receive reports.  However, an ASAP report differs from the traditional departmental report in that it is separately coded and is routed directly to the ASAP ERT for confidential access and analysis.  A copy of the report is immediately forwarded to NASA for confidential participation in the Aviation Safety Reporting System (ASRS).  The ASAP Manager assumes the responsibility to fulfill the ten-day ASRS reporting requirement on all reports submitted within five days of the reported event.  Except as provided in paragraph 2.15 of this MOU, or as may be required by law, no party or individual not directly responsible for the investigation and corrective action recommendations of the ERT is authorized access to an ASAP report that can be identified with a reporting employee.  Furthermore, no record of an employee's ASAP participation is ever kept in any Southwest Airlines personnel file or other employee records that can identify the individual.  In all cases, the recommendations of the ERT will reflect a mutual desire to solve problems rather than to take a punitive approach to the reporting employee.  An employee's ASAP report regarding an event will not be used to initiate or support any Company disciplinary action.

If it appears that an employee may have intended to file an ASAP report, but submitted a traditional departmental report instead, the employee's management supervisor will advise the employee of the apparent error. If the employee agrees that it was his/her intention for the report to have been submitted under ASAP, the supervisor will advise the employee to file an ASAP report referencing the original tracking number of the traditional departmental report.  For the purpose of determining timely submission of reports which are rerouted on that basis, the submission date/time for ASAP purposes will be same as the date/time that the traditional departmental report was originally submitted.

Conversely, if an employee submits a routine report to ASAP that does not involve a serious flight safety concern or possible deviation and would be more appropriately handled by a management supervisor or other Company official, then that report may be re-routed to the traditional departmental reporting system.  However, this action requires the *unanimous consent* of the ERT and the reporting employee's concurrence.  If subsequent investigation reveals evidence of a possible violation, then the employee retains ASAP participation status by virtue of the original submission.

*De-identified* reports may be released by the ERT to facilitate corrective action and to increase employee safety awareness.  In cases where corrective action involves additional employee training-to-proficiency, it may be necessary to contact an individual's management supervisor to coordinate and schedule the training. Such notification is contingent upon the employee's voluntary participation in complying with the ERT's corrective action

recommendations.  Otherwise, no disclosure of the employee's participation in ASAP is made.

## 3.7    Amendments and Revision Control

This Memorandum of Understanding [Program Description (Section II)] may be amended at any time by mutual acceptance of all the signatories. The certificate holder shall be responsible for complying with standard revision control methodology with respect to the MOU. The original and subsequent revisions should include:

(a)    A change control page, identifying the revision number.

(b)    A brief synopsis of each change to the original document.

(c)    Which pages are to be removed and replaced.

(d)    A list of effective pages.

(e)    A table of contents.

(f)    On each page of the MOU a calendar date when that page was prepared or revised.

(g)    For all revisions to an original MOU, a revision number on each page, which is revised.

(h)    Sequential page numbers on all pages of the MOU (except the cover page, if applicable, which shall be understood to constitute page i).

## 3.8    Duration and Termination

Any party to the ASAP Memorandum of Understanding may voluntarily end the program at any time upon written notification to the applicable parties. Failure of any party to follow the terms of the agreement ordinarily will result in termination of the program.  Upon termination of the program, all means of reporting to ASAP will be immediately disabled and all employees will be advised. Termination or modification of a program will not adversely affect any one who acted in reliance on the terms of a program in effect at the time of that action.  When a program is terminated all reports and investigations that were in progress will be handled under the provisions of the program until they are completed.  Any ASAP report pertaining to events occurring after the termination of the program will be immediately returned without review to the reporting employee and no record shall be kept of the report.

SWA App. 61

# IV   Summary and Signatures

## 4.1   Summary

Recognizing that the cornerstone of ASAP is the trust and cooperation developed by the partnership process, our common purpose improves the relationships existing between parties.  All parties agree that the objective of the ASAP program is accident prevention and that, collectively, we achieve results that were previously unattainable through traditional methods.  Therefore, Southwest Airlines, the FAA, and SWAPA voluntarily renew the collective commitment to accident prevention through ASAP.

## 4.2   Signatures

Southwest Airlines Pilots' Association
President

Date:   7/18/07

Federal Aviation Administration
Manager, SWA CMO

Date:   07/19/07

Southwest Airlines
Executive Vice President & Chief of Operations

Date:   07/12/2007

SWA App. 62

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANICE MCCALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:08-cv-02000-M |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., and | § | |
| SOUTHWEST AIRLINES PILOTS | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF JEFF HAMLETT

1.      My name is Jeff Hamlett.  I am over twenty-one years of age and am competent in all respects to make this declaration.  The facts stated in this declaration are within my personal knowledge and are true.

2.      I am the Director of Flight Safety for Southwest Airlines Co. ("Southwest").  I have held this position since February 1, 2010.  Before becoming the Director of Flight Safety, I was the Manager of Aviation Safety Action Partnership ("ASAP") (January 1, 2004 to November 30, 2007) and the Senior Manager of Flight Safety (July 1, 2007 to February 1, 2010) for Southwest.  I held those positions until I was promoted to my current position.

3.      Based on my personal experiences; my review of the business records of Southwest; and the performance of my job duties, each statement in this declaration is true and within my personal knowledge.

4.      As part of my duties and responsibilities, I oversee the ASAP program on behalf of Southwest.

5.      ASAP reports are confidential.  ASAP participants submit ASAP reports directly to the ASAP program.  An Event Review Team ("ERT"), consisting of representatives from the Federal Aviation Administration, Southwest, Southwest Airlines Pilots' Association, and necessary administrative staff receives the report.

6.      The ASAP program conducts its own investigations and does not provide Southwest with any identified information gathered in connection with the investigations.  The ERT does not share identified ASAP report(s) or any related material outside of the ASAP

program.

7.      Although Southwest has one representative on the ERT at any given time, that representative exercises no authority over the management of pilots and is not involved in anyway with any decision Southwest makes to discipline a pilot.  Southwest therefore never receives or considers ASAP material in making disciplinary decisions.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Dated April 15, 2010.**

Jeff Hamlett