UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANICE MCCALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-2000-M |
| | § | |
| SOUTHWEST AIRLINES CO. and | § | |
| SOUTHWEST AIRLINES PILOTS' ASSN., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions for Summary Judgment filed by Defendants Southwest Airlines Pilots' Association [Docket Entry #75] and Southwest Airlines Co. [Docket Entry #78]. For the reasons explained below, both Motions are **GRANTED**.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Janice McCall is an airline pilot employed by Defendant Southwest Airlines ("Southwest") at the rank of First Officer. Her employment with Southwest is governed by a collective bargaining agreement. McCall is a member of Defendant Southwest Airlines Pilots' Association ("SWAPA"), a union that is the certified collective bargaining representative for all Southwest pilots.

On December 5, 2007, McCall was paired with Captain Jim Austin to pilot Flight 3839 from Philadelphia to Nashville. The temperature was slightly below the freezing point, and light snow was falling. Pursuant to her responsibility as First Officer to conduct the pre-flight inspection, McCall did an exterior inspection of the aircraft. She saw a "light dusting of snow" on top of the fuselage, nose and engine cowling, but "could not get a good look at the top of the

wings from the ground."[1]  Austin and McCall decided not to deice the aircraft prior to takeoff.[2]
A flight attendant, a passenger and two Southwest pilots deadheading on Flight 3839 observed snow on the wings.[3]  Upon landing in Nashville, the attendant and one of the pilots reported the failure to deice to Southwest.

On February 11, 2008, following an investigation into the deicing incident, Southwest terminated McCall, citing her failure to properly inspect Flight 3839 in accordance with Southwest's Flight Operations Manual (the "Manual").[4]  McCall immediately filed a grievance, claiming that Southwest wrongfully terminated her employment, and requesting a reduction in her punishment.  SWAPA represented her throughout this process.  When Southwest denied the grievance, SWAPA requested a Systems Board of Adjustment hearing on McCall's behalf in accordance with the collective bargaining agreement.

On May 8, 2008, before McCall's grievance proceeded to the Systems Board of Adjustment, SWAPA reached a settlement agreement with Southwest.  Pursuant to the settlement agreement, McCall was reinstated and her termination reduced to a thirty-day suspension, already served, without pay.  She was given back pay for all other lost time, with no loss of seniority or benefits.[5]

On November 7, 2008, McCall filed suit against SWAPA and Southwest, alleging that SWAPA breached its duty of fair representation and that Southwest breached the collective bargaining agreement.  McCall also asserted claims for retaliatory discharge and defamation, which this Court subsequently dismissed.  SWAPA and Southwest now move for summary

---

[1] Southwest's Motion, App. at 63 (McCall Irregularity Report (hereinafter "IR")).
[2] Deicing is a procedure used to clear aircraft wings of accumulated snow and ice and to protect the aircraft during flight.  Fluid sprayed on the wings keeps snow and ice from adhering to the wings during takeoff and flight.
[3] "Deadheading" pilots are carried free of charge on a flight they are not actively working.
[4] The termination letter was dated January 21, 2008, but because McCall was on military leave at that time, she was not given the letter until her return.  See Southwest's Motion, App. at 227-28 ¶ 14 (Dorsch Decl.); App. at 296 (McCall Dep.).
[5] See SWAPA's Motion at 27.

judgment on McCall's remaining claims.

## LEGAL STANDARD

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[6] A genuine issue of material fact exists when a reasonable jury could find for the non-moving party.[7] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[8] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[9] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[10]

## ANALYSIS

Before an employee may bring suit against an employer for breach of a collective bargaining agreement, the employee is generally required to exhaust any grievance or arbitration remedies provided in that agreement.[11] But when the union representing the employee against the employer in any grievance or arbitration procedure "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee may

---

[6] Fed. R. Civ. P. 56(c).
[7] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[8] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[9] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[10] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[11] *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983) (citations omitted).

bring suit against both the employer and the union in federal court without having first exhausted the grievance and arbitration remedies under the collective bargaining agreement.[12] Such a lawsuit, which McCall brings here, is called a "hybrid" action.

In a hybrid action, the suit against the employer for breach of a collective bargaining agreement is "inextricably interdependent" with the suit against the union for breach of the duty of fair representation.[13] Unless the employee proves both claims, neither the claim against the employer nor the claim against the union can stand.[14] Because the Court finds that Southwest did not breach the collective bargaining agreement by terminating McCall, and that Southwest is therefore entitled to summary judgment on McCall's claim for breach of the collective bargaining agreement, the Court also grants SWAPA's Motion for Summary Judgment on McCall's claim for breach of the duty of fair representation, without reaching the merits of that claim.

When a collective bargaining agreement allows an employee to grieve and arbitrate termination of her employment, courts have recognized an implicit provision that the employee may only be terminated for "just cause."[15] "Just cause" is "a term of art that defines the many unrelated, independent acts that serve as grounds for employee discipline under a collective bargaining agreement."[16] This Court has previously described "just cause" as "a real cause for a reasonable employer to dismiss an employee in good faith, rather than an arbitrary whim or caprice."[17] McCall does not contest that the violations of the Manual and of the Federal Aviation Regulations of which she is accused—"careless and reckless endangerment of the lives of all

---

[12] *See id.* at 164 (citations omitted).
[13] *See id.* at 164-65 (citation omitted).
[14] *See id.* at 164-65 (citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981)); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 564, 570-71 (1976).
[15] *See Lowe v. Pate Stevedoring Co.*, 558 F.2d 769, 771 n.3 (5th Cir. 1977).
[16] *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 409 (5th Cir. 2003) (quoting *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989)).
[17] *Williams v. Simmons Co.*, 185 F. Supp. 2d 665, 679 (N.D. Tex. 2001) (Solis, J.) (citation omitted).

onboard [Flight 3839]," by allowing the flight to depart without deicing and with ice contamination on the wings—would constitute just cause for termination.[18] Rather, she contends that she complied with the Manual.[19]

However, Southwest has carried its initial burden of demonstrating, through the record, that there are no genuine issues of material fact that McCall violated the Manual and the Federal Aviation Regulations by failing to properly inspect Flight 3839 for contamination. The evidence shows that the temperature never rose above the freezing point before Flight 3839 took off, and that light snow was falling.[20] Both McCall and Austin reported "snow" as a weather condition at the Philadelphia airport.[21] The Philadelphia airport's deicing plan was in effect,[22] and Southwest confirmed through contacting other pilots and by reviewing the deicing log that every Southwest pilot who departed from Philadelphia on December 5, 2007, around the same time as Flight 3839 deiced his or her aircraft before takeoff.[23]

The Manual directs that McCall, as the First Officer, was responsible for conducting a preflight inspection of the aircraft.[24] Specifically, in cold weather conditions, the First Officer is to "check the wing surfaces for frost, snow, or ice."[25] Southwest considers this check "essential

---

[18] *See* Southwest's Motion., App. at 78 (termination letter). Ordinarily, the presence of "just cause" in each case is largely determined by the content of the collective bargaining agreement. *See Weber Aircraft, Inc. v. General Warehousemen and Helpers Union Local 767*, 253 F.3d 821, 825 (5th Cir. 2001) (stating that "each case must turn on its own particular facts, CBA provisions, arguable constructions or applications thereof, and arbitral actions"). Southwest does not cite to particular portions of its collective bargaining agreement that show that McCall's alleged actions constitute just cause for termination. However, the Court concludes from the seriousness of the possible consequences that failure to deice may be considered just cause for termination in this context.
[19] *See* McCall's Response at 2-6.
[20] *See Southwest's Motion.*, App. at 3-4 (Keller Decl. ¶¶ 13, 14) (citing to and explaining weather reports, App. at 33, 35-37).
[21] *See id.*, App. at 63 (McCall IR); App. at 65 (Austin IR).
[22] *See id.*, App. at 4 (Keller Decl. ¶ 14) (citing to and explaining weather report, App. at 35-37).
[23] *See id.*, App. at 39 (deicing log), App. at 226 ¶ 9 (Dorsch Decl.).
[24] *See id.*, App. at 3 (Keller Decl. ¶ 11); App. at 15, 17 (Flight Operations Manual (hereinafter "FOM")) §§ 3.1.7, 3.2.8)
[25] *See id.*, App. at 23 (FOM § 3.2.14).

for safe flight operations."[26] Departing with ice, snow, or other contaminants can disrupt airflow over the wing, which can ultimately result in loss of control of the aircraft and a deadly crash.[27] Federal Aviation Regulations prohibit takeoff "when frost, ice, or snow is adhering to the wings, control surfaces, propellers, engine inlets, or other critical surfaces of the aircraft."[28]

Southwest points to evidence showing that McCall failed to adequately conduct this portion of the preflight inspection. McCall herself admitted in writing two days after the incident that she had seen snow on the top of the fuselage, nose, and engine cowling, but that she had failed to "get a good look at the top of the wings from the ground."[29] During a meeting with her Chief Pilot, she admitted that she "[d]id not make a concerted effort to check the top of the wings for contamination"[30] and did not follow the Manual's Exterior Inspection Guidelines, which require all surfaces to be checked to ensure they are free of frost, ice, and snow.[31] Moreover, she did not know if Austin had done so.[32] Although Austin, as Captain, had the ultimate responsibility for the flight, McCall had an independent duty to "advise the [Captain] of deviations from established policies, procedures, and/or regulations" and to "remain vigilant and alert to ensure that the Captain had not overlooked anything of importance."[33]

A concerned passenger saw snow accumulation on the wing prior to takeoff and asked Cindi Schneider, one of the flight attendants, whether the plane would be deiced.[34] At the gate, Schneider saw that both wings were covered with snow and ice.[35] Two deadheading Southwest pilots, Captain Mercedes Balin and First Officer Michael Vezina, saw snow and ice

---

[26] *Id.*, App. at 28 (FOM § 4.3.11).
[27] *See id.*, App. at 5 ¶ 16 (Keller Decl.); App. at 311 (Matter Dep.).
[28] 14 C.F.R. § 121.629.
[29] *See* Southwest's Motion, App. at 63 (McCall IR).
[30] *See id.*, App. at 230.
[31] *See id.*, App. at 225 (Dorsch Decl.); App. at 26 (FOM § 4.3.5.); App. at 219.
[32] *See id.*, App. at 232.
[33] *Id.*, App. at 14, 15 (FOM §§ 1.2.5, 3.1.7).
[34] *See id.*, App. at 71 (Schneider IR); App. at 89 ¶ 5 (Schneider Decl.).
[35] *See id.*, App. at 71; App. at 89 ¶ 4.

accumulation on the right wing of the aircraft prior to takeoff.[36] Southwest had photographs, taken by Vezina, showing that the layers of snow and ice continued to adhere to the right wing even after takeoff.[37] Vezina took three of the photographs after takeoff and during the aircraft's climb up to cruising altitude, and the fourth picture once the aircraft had reached cruising altitude.[38]

McCall argues that Southwest did not have just cause to terminate her employment because she complied with the Manual. However, McCall fails to designate specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.

McCall first states that a First Officer who complies with the Manual has fulfilled her duties.[39] She cites to the testimony of John Matter, allegedly a Southwest employee, who stated that the duty of a First Officer during normal preflight is to "check for snow and ice on the . . . wings, tail, control surfaces, [and] fuselage."[40] Matter verified that if a First Officer has complied with the cold weather section of the Manual, she has done her duty in terms of inspection for ice on the wings.[41] Southwest does not contest this point.

McCall next states that a wing inspection can be accomplished by a "representative check," which McCall describes as "look[ing] at those parts of the aircraft that you can see from the jetway and, if snow is not adhering to those parts of the aircraft . . . infer[ing] that snow is not adhering to other surfaces.[42] Even if this were true, McCall cannot point to any evidence that she in fact conducted such a "representative check." Although she states in her Response that she "checked the wing that she could see from the jetway, concluded that it was clear of ice, and,

---

[36] *See id.*, App. at 67 (Vezina IR), 68 (Balin IR), App. at 95 ¶¶ 4 (Balin Decl.); App. at 140 ¶ 4 (Vezina Decl.).
[37] *See id.*, App. at 141 ¶ 5 (Vezina Decl.); App. at 144 (photographs); 202 ¶ 8 (Kass Decl.).
[38] *See id.*, App. at 141 ¶ 5.
[39] *See* McCall's Response at 2.
[40] *See id.* at 3 (citing App. at 2). McCall does not explain how Southwest employs John Matter, nor can the Court determine from the briefing what role, if any, John Matter played in the investigation of this case.
[41] *See id.*
[42] *Id.* at 3

accordingly, inferred that the other wing was clear of ice also," she cites to absolutely no evidence in the record to support this statement of facts.[43]  To survive summary judgment, McCall "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports . . . her claim."[44]  "Rule 56 does not impose upon the district court a duty to shift through the record in search of evidence to support a party's opposition to summary judgment."[45]

Finally, McCall argues that she was not required to inspect the wings from the passenger cabin, as recommended by the Manual; and furthermore, that if anyone had that duty, it is the Captain, not the First Officer.[46]  This is a straw man argument.  The Manual's recommendation to inspect the wings from the passenger cabin is just that—a recommendation.  It is McCall's failure to conduct a proper preflight inspection of the wings, not the particular vantage point from which she failed to conduct such an inspection, that is the cause of termination in this case.

To the extent that McCall claims that Southwest terminated her without just cause by failing to test the veracity of certain witnesses, particularly the deadheading pilots who were on board Flight 3839, she does not provide any evidence in support of this allegation aside from showing that Southwest did not cross-examine the pilots.  However, this assertion—which Southwest does not contest—does not contradict Southwest's position that it tested the veracity of those witnesses by comparing and cross-checking their testimony against all the other evidence in the record.

---

[43] *Id.* at 4.
[44] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[45] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quoting *Ragas*, 136 F.3d at 458).
[46] *See* McCall's Response at 4, 5.

The Manual stresses that safety is Southwest's highest priority,[47] and following the Manual and operating aircraft in a safe manner is an integral part of any Southwest pilot's employment.[48] McCall's admitted failure to follow the preflight exterior inspection requirements provides "just cause" for Southwest to terminate her employment. Because the Court finds that no genuine issues of material fact exist as to McCall's claim against Southwest, both Defendants' Motions for Summary Judgment are GRANTED.

## CONCLUSION

For the reasons stated above, both Defendants' Motions for Summary Judgment are **GRANTED**. The Court will enter Final Judgment in a separate Order.

**SO ORDERED.**

August 6, 2010.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[47] *See* Southwest's Motion, App. at 12 § 1.2.1.
[48] *Id.*, App. at 3 (Keller Decl. ¶ 10); App. at 12 § 1.2.1; App. at 80 (termination letter).